Benjamin E. WHITE alias William W. Blakey, Appellant

v.

UNITED STATES of America, Appellee.

No. 14904.

United States Court of Appeals District of Columbia Circuit.

Argued June 3, 1959.

Decided Oct. 22, 1959.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. William R. Lichtenberg, Washington, D. C. (appointed by this court) for appellant.

Mr. Edward C. O'Connell, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

Appellant was convicted on eleven counts, including forgery, housebreak-

ing and grand larceny, in violation of 22 D.C.Code §§ 1401, 1801, 2201 and 2202 (1951), and of interstate transportation of falsely made securities, in violation of 18 U.S.C. § 2314 (1958).[1]

Documents taken from appellant's person when he was arrested by a city policeman in New York City—evidence material to the prosecution's proof —were introduced in evidence over his objection and after his motion to suppress, filed under Rule 41(e), Fed.R. Crim.P., 18 U.S.C., had been overruled. His position is that this evidence was secured from him by an unreasonable search and seizure in violation of the standards of the Fourth Amendment,[2] thus under settled law rendering the evidence inadmissible on his trial in a Federal court, United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, even though the search and seizure were conducted by a municipal officer, without the involvement of any Federal officer. Hanna v. United States, 104 U.S.App.D.C. 205, 260 F.2d 723. The United States counters that the search and seizure were incidental to appellant's lawful arrest, thus enabling the evidence to be used under an exception to the general rule requiring a valid search warrant to support the reasonableness of a search or seizure. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. Reasonableness, whether or not there is a search warrant, is the ultimate constitutional test of the lawfulness of a search or seizure. See, e. g., United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, where,

in an opinion by Mr. Justice Butler, the Court said:

"The Fourth Amendment forbids every search that is unreasonable and is construed liberally to safeguard the right of privacy * * *. Its protection extends to offenders as well as to the law abiding."

In passing upon the reasonableness of the search and seizure we accept the factual version given by the police officer. He was seated in a car between 145th and 146th Streets on the east side of Bradhurst Avenue, New York City, about 2 o'clock in the morning of August 11, 1958. Appellant was walking along with another man and was under observation about 30 seconds, or 100 feet. He kept looking back as if expecting someone to follow him. The officer stopped the two men and asked for identification. The papers produced by appellant, considered with his statements, created a discrepancy. The man with appellant, however, demonstrated his own identification, whereupon the officer "let him go."

When he accosted appellant the officer told him to put his hands together "this way," described during the trial as requiring him to clasp his hands in a certain position. The officer "patted him down to make sure he had no weapons," and then felt in his pockets, up to which time he had no intention of arresting him. The officer asked appellant where he worked, receiving the reply he had not worked for over a year; he said he maintained himself by gambling. Thereupon the officer informed appellant he was arresting him for vagrancy. He had stopped appellant, told him to put his hands together, and started ordering him around, because "that is the procedure for that area. There had been numerous muggings, and narcotic activity in that area." Asked if it was not a fact

---

1. His sentence is to a term of imprisonment for a period of three to ten years on each count, sentences to run concurrently.

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. Amend. IV.

that he thought appellant had narcotics on him he replied, "That is correct," though he had never seen appellant before. The foregoing is the substance of the officer's testimony on the motion to suppress.

At the trial itself the officer further testified that shortly after he had taken appellant into custody he took him into a hallway or doorway and searched him thoroughly, having him take off his shirt, trousers and shoes—after, as the officer said, he was placed under arrest for vagrancy, though he had stopped him because "he thought he was a narcotics seller." The officer said, "anyone walking in that area at that time of morning is involved in some illegal activity"— "practically anyone." While he had been sitting in the car he had seen approximately four other persons coming and going whom he had stopped and searched because they were walking down the streets in the area, but he had not arrested anyone. He arrested appellant not in the belief he was in fact a vagrant but booked him as a vagrant after appellant gave his means of support; he stopped appellant and the five other people to ascertain whether or not they had narcotics.

The papers taken from appellant when he was searched included certain Nationwide money orders which obviously had been stolen. These were introduced in evidence at appellant's trial, and, with other evidence, were persuasive of his guilt.

■ The officer had no warrant of any kind and no probable cause to accost appellant, require him to place his hands in a certain position, and frisk him.[3] Cf. Green v. United States, 104 U.S.App. D.C. 23, 259 F.2d 180. There had been no outcry or report of a felony and appellant committed no misdemeanor in the officer's presence. To require appellant to disrobe, and thereupon to search his clothes and person, was an unreasonable

and unlawful violation of his rights as a citizen. It was quite unjustified by any necessity to prevent the destruction of evidence, to prevent flight, or by any other good reason. Even if we assume appellant at some point was lawfully arrested for vagrancy, of which he was subsequently convicted in New York, the search was unreasonable. According to the officer's own testimony, however, the search did not turn upon an arrest for vagrancy, and to attribute it to such an arrest would be to take an unrealistic view of the evidence. The arrest for vagrancy was incidental to the search, rather than the converse. Appellant was accosted, frisked and subjected to a general search of his person for evidence of crime, in the course of the exercise of control over him by the officer, undertaken for a suppositious violation of the narcotic laws. We have more than once excluded evidence obtained by a search which in truth was not incidental to an arrest, but when in fact the arrest was incidental to a search. Lee v. United States, 98 U.S.App.D.C. 97, 98–99, 232 F.2d 354, 355–56; McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977. This is such a case.

■ It hardly needs repeating that the strength of the evidence as proof of guilt does not serve retroactively to validate the invalid means by which the evidence was secured, so as to permit its use on the trial of the one whose rights are violated. This has long been settled by the Supreme Court—United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210—and not since questioned. There the Court said, through Mr. Justice Jackson, "We have had frequent occasion to point out that a search is not to be made legal by what it turns up.[15] In law it is good or bad when it starts and does not change character from its success." (Footnote omitted.) To overlook a violation of a great constitutional protection of individual personality because of the potency of the evidence se-

3. There are New York decisions, and other authorities, to support the view that the accosting, frisking and assumption of dominion over appellant's person constituted an arrest. People v. Esposito, 118 Misc. 867, 194 N.Y.S. 326 (1922). And see 1 Alexander, The Law of Arrest, 353, 358 (1949).

cured by the violation would be to depart from correct principles in the administration of criminal law by federal courts. Compare Rochin v. People of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. The exclusionary rule, established by the Supreme Court as the logical implication of the Fourth Amendment, does not permit this.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.