Bobby **HARRIS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 24673.

United States Court of Appeals Fifth Circuit.

Jan. 11, 1968.

William L. Spearman, Atlanta, Ga., for appellant.

Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before BROWN, Chief Judge, FAHY,* and DYER, Circuit Judges.

FAHY, Circuit Judge:

Appellant was convicted on four counts of an indictment charging the theft of mail matter of the United States from a mail receptacle, in violation of 18 U.S.C.A. § 1708. He is under a general sentence of five years imprisonment. His appeal questions the admission in evidence of exhibits consisting of three welfare checks of the State of Georgia, the envelopes in which they were mailed, one social security check of the United States and the envelope in which it was mailed. These were taken from his person in circumstances which give rise to his contention they were seized inconsistently with the Fourth Amendment to the Constitution of the United States because of the lack of probable cause for his arrest,[1] as to which we now outline the testimony.

Mrs. Lillie M. Thorne lived in a neighborhood of apartments. She testified that on March 3, 1966, the date of the alleged crimes, she observed appellant from the window of her apartment. At first she saw him in the backyard, which made her suspicious. After this she saw him go to another apartment and "pretend" to knock on the door. He looked over the mailbox there, and next he went to another door and did the same thing. He took his finger and pulled back the mail as if looking for something in the box. Mrs. Thorne saw him repeat these movements at other apartments, whereupon she went for a police officer at a nearby shopping center, found Detective Hendricks there, and told him what she had seen, describing appellant. Mr. Hendricks testified that Mrs. Thorne "informed me that a person had been noticed by her going from door to door checking the mailboxes."

In accordance with directions and a description of appellant which Mrs. Thorne furnished, Detective Hendricks returned to the vicinity of the apartments where he encountered appellant standing on a porch. Upon approaching appellant, Mr. Hendricks saw him looking into the mailbox there. When Mr. Hendricks asked appellant to state his business there he replied that he was visiting. The detective knocked on the door. No one answered. He noticed one or more brown envelopes protruding from appellant's pocket—"the type of which welfare checks or governmental checks come in, and I asked to see them, and asked his name." He gave his name, which was not on the checks in his possession. Mr. Hendricks asked him to have a seat in the detective car and radioed to the Police Department

---

* Senior Circuit Judge of the District of Columbia Circuit, sitting by designation.

1. Amendment IV—Searches and Seizures: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

and asked to have a Postal Inspector come out. Mr. Segrest, a Postal Inspector, came to the scene, and was informed by Mr. Hendricks of "what I had." Mr. Hendricks further testified that he found on the defendant's person one envelope containing a check, one empty envelope, and three checks not enclosed in envelopes.

Mr. Segrest testified that when he arrived Detective Hendricks turned over to him the two envelopes and the four checks and that he then "looked into Bobby Harris' jacket pocket and found two more envelopes * * *." Detective Hendricks and Mr. Segrest identified these envelopes and checks at the trial. They were admitted in evidence over defense objection.

We refer now to the legal criteria established by the Supreme Court by which to determine the question of probable cause.

In Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, it is said:

"In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, supra 338 U.S. 160, at 175, 69 S.Ct. 1302, 93 L.Ed. 1879. Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense had been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543.[5] (Footnote omitted; brackets in original.)

The standards are set forth as follows in Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed. 2d 441:

It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would "warrant a man of reasonable caution in the belief" that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543—must be measured by the facts of the particular case. The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would "leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879. (Footnote omitted.)

The observations of Mrs. Thorne justified at least a very strong suspicion that she saw appellant committing a felony. These observations were communicated to Detective Hendricks. He did not rely upon them alone. He personally observed similar conduct, thus not only confirming the information supplied by Mrs. Thorne but adding independent evidence of the commission of a felony in his presence. This was followed by seeing the brown envelopes protruding from appellant's pocket, with the reasonable inference they were envelopes used in transmitting welfare checks through the mail.[2] Clearly, at the time Mr. Hendricks asked appellant to state his name and to let the detective

---

2. This inference is strengthened by the officer's testimony that,

* * * each month, the 3rd of the month we had any number of losses in that area from the theft of the government checks. This particular day I was in the area for that reason, looking for someone who may have been removing checks from the mailboxes.

see the protruding envelopes there was probable cause for Mr. Hendricks to believe appellant had committed a felony.

Mr. Hendricks communicated his information to Inspector Segrest, who upon his arrival acted with Mr. Hendricks. When Mr. Segrest removed two additional envelopes from appellant's coat pocket there was no less probable cause for Mr. Segrest to believe appellant had committed a felony than there was for Mr. Hendricks when he made his initial encounter. There clearly was probable cause to support the arrest at any time after Mr. Hendricks first came upon appellant looking into a mailbox on the porch of the apartment and saw the brown envelopes protruding from his pocket.

■ There is authority for the position that a search and seizure are lawful, although prior to an arrest, provided there is probable cause for an arrest when the search and seizure occur:

> Even if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun. See United States v. Gorman, 2 Cir., 355 F.2d 151, 159–160 (1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966).

Bailey et al. v. United States, D.C. Cir., 389 F.2d 305, decided December 14, 1967.[3] And see Willson v. Superior Court, 46 Cal.2d 291, 294 P.2d 36, 38, where it is held that if the officer is "justified in making an arrest, it is * * * immaterial that the search and seizure preceded rather than followed the arrest." In United States v. Gorman, referred to in *Bailey*, the court discussed this position at some length, and sympathetically, although the court in the end rested upon an independent ground in upholding the search and seizure there as lawful.

We too need not rest upon the view of the law expressed in *Bailey*, reasonable as it is. The trial judge in our case found appellant was under arrest when the envelopes were taken into Mr. Hendrick's possession, notwithstanding the detective's disclaimer at trial that the arrest had then occurred. This view of the trial judge is fortified by the testimony of appellant when he took the stand in his own defense. Moreover, as we have said, on appeal the sole contention pressed by appellant is that the arrest was not supported by probable cause, not that it occurred subsequent to the search and seizure, or that any legal distinction is to be made between the admissibility of the evidence obtained by Mr. Segrest and that obtained by Mr. Hendricks. We do not disagree with the ruling of the trial court as to the arrest, considering the record as a whole; and we are not inclined to draw a fine line as to its timing, when appellant does not seek this at our hands and probable cause for the arrest was so clear.

The warrantless search and seizure accordingly are upheld as incident to a lawful arrest, United States v. Rabinowitz, supra, from which it follows that the checks and envelopes were properly received in evidence. There being no further question presented the judgment is

Affirmed.

---

3. As the court recognizes in *Bailey* its ruling is not deemed inconsistent with the well established principle that "a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210. (Footnote omitted.) Moreover, if the position espoused in *Bailey* is sound it is within the rule that a warrantless search and seizure incidental to a valid arrest is not unreasonable under the Fourth Amendment. United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653.