**UNITED STATES of America,**
**Appellee,**

v.

**Doyle Ray SKINNER, Appellant.**

**No. 19421.**

United States Court of Appeals
Eighth Circuit.

June 18, 1969.

Robert F. Collins, South St. Paul, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Patrick J. Foley, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and VOGEL and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant was convicted by a jury of robbing the Northern Federal

Savings and Loan Association, St. Paul, Minnesota, on September 29, 1967, in violation of 18 U.S.C. § 2113. The sole issue on this appeal is whether the trial court erred in denying the defendant's pre-trial motion to suppress evidence allegedly seized pursuant to an illegal search and seizure. We affirm for the reasons stated below.

■ The Northern Federal was robbed of approximately $5,500 shortly after noon on September 29, 1967. Approximately an hour later at 1:15 P.M., the defendant was arrested at the Burlington Hotel by St. Paul Police Detective Vernon Michel. Detective Michel became aware of the robbery at about 12:10 P.M. when it was broadcast over police radio. Detective Michel obtained all his information from the police broadcasts.[1]

The robber was originally described as a middle-aged white man of 45 years, weighing 155 pounds, five feet ten inches tall, slender build, wearing a brown hat and a red coat sweater with white stripes on the sleeves. The description was later amended to add that the man was in need of a shave, weighed 145–170 pounds, had brown hair turning gray and thinning, and wore a green and red stocking cap. This description was further amended to delete the stocking cap and add that the hat was a short brimmed brown or gray hat and that the robber was definitely less than five feet six inches tall.

A subsequent broadcast added that a man answering the description had fled from police officers into the union depot and down the tracks losing his hat in the process. It was then reported that railroad employees in the control tower spotted a man matching the description down "by that Burlington House near the fish hatchery." Then, it was reported that two men were seen by a switchman near the fish hatchery and that one had graying hair, but the description was vague. Other reports from switchmen reported a lone man in the fish hatchery area. Other officers were directed to cut off retreat to the west. It was then reported that an officer had found a sweater at Sibley and Kellogg, which is slightly west of the depot and considerably west of where the search was centering. Information that the robber was wearing a dark colored "sport" shirt was broadcasted. A witness to the robbery identified the sweater and hat and the Deputy Chief, apparently concluding that the switchmen had been mistaken, redirected the search to the area west of the depot.

The railyards east of the depot are bordered by the Mississippi River on the south. On the north, the yards are bordered by a 100-foot bluff "which is nearly straight up and down" and which runs from the depot to a point just short of the Burlington Hotel. Although the Deputy Chief ordered the search concentrated to the west, Detective Michel was convinced the geography of the area, plus the earlier reports, dictated that the robber would flee east. He decided to check an old railroad workers' hotel, the Burlington.

Detective Michel and Officer Biagi entered the hotel and talked to the owner. They noticed two persons sitting at the lunch counter. The owner stated that he knew one of the men but not the other. Detective Michel approached the unidentified man and asked him to identify himself. Detective Michel stated that the man matched the description of the wanted man in every respect. The suspect showed Detective Michel his Navy discharge papers and Detective Michel asked him if he could search him. The man stated, "Yes, go ahead." The man pulled a wallet out of his pocket and put it on the table. Detective Michel proceeded to search the man's front pocket and discovered a handful of bul-

---

I. "The details concerning a case which are furnished an officer via police radio can be taken by him as reasonably trustworthy information upon which to base his actions. * * *" (Citations omitted.) Klingler v. United States, 409 F.2d 299, at 303 (8th Cir.).

lets. Simultaneously, Officer Biagi noted that the defendant had a pistol. Detective Michel then said, "You are under arrest."

The officers seized the pistol and continued their search. They recovered some $5,500 concealed on the defendant's person.

The defendant contends that the evidence—the bullets, the pistol and the money—should have been suppressed on the grounds that it was obtained as a result of an illegal search and seizure. He argues that probable cause to arrest did not exist prior to the search and that, in any event, the arrest was not made until after he had been partially searched and the bullets and gun discovered. Thus, he reasons that the search and seizure cannot be sustained as being incident to a lawful arrest.[2]

Because we believe that this search was incident to and contemporaneous with, Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), a lawful arrest, United States v. Rabinowitz, 339 U.S. 56, 60–61, 70 S.Ct. 430, 94 L.Ed. 653 (1950),[3] we do not consider the consent issue.

### PROBABLE CAUSE

Whether probable cause exists to make an arrest turns upon the facts of the particular case. Pigg v. United States, 337 F.2d 302, 305 (8th Cir.

1964). Its existence here turns on whether the broadcast description of the suspect was sufficiently detailed so as "to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The trial court, after a full hearing, held:

"The officers were in fresh pursuit, that they had reasonable cause to suspect and to believe defendant was the robber and reasonable grounds to arrest defendant. * * *"

The facts support the trial court's conclusion.

Detective Michel was looking for a person matching the following description: white, male, 35–45 years old, slender build, less than five feet six inches in height, brown hair, turning gray, needing a shave, hatless and located in a limited geographic area.

This was not a general description applicable to a large number of people. It was reasonably detailed and specific. Detective Michel testified that the defendant matched the description in every respect. The trial court found that the defendant matched the descrip-

2. No effort was made by the government to justify the search and seizure of the bullets and the pistol on the basis of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See, 53 Minn. L.Rev. 652 (1969).

3. The statutory law of Minnesota (M.S.A. § 629.34) provides that a peace officer may make an arrest without a warrant as follows:
"A peace officer may, without warrant, arrest a person:
"(1) For a public offense committed or attempted in his presence;
"(2) When the person arrested has committed a felony, although not in his presence;
"(3) When a felony has in fact been committed, and he has reasonable cause

for believing the person arrested to have committed it; or
"(4) Upon a charge made upon reasonable cause of the commission of a felony by the person arrested.
"To make such arrest the officer may break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he shall be refused admittance."
See, State v. Stewig, 281 Minn. 331, 161 N.W.2d 673 (1968); State v. Fish, 280 Minn. 163, 159 N.W.2d 786 (1968); State v. Bean, 280 Minn. 35, 157 N.W.2d 736 (1968); State v. Harrison, 279 Minn. 310, 156 N.W.2d 763 (1968); State v. Purdy, 278 Minn. 133, 153 N.W.2d 254 (1967); State v. Sorenson, 270 Minn. 186, 134 N.W.2d 115 (1965).

tion. The defendant was found in the limited geographic area where the suspect was reported to have fled. The two officers were in "hot pursuit" of the suspect. Under such circumstances, it cannot be said that the arrest of the defendant was based on mere suspicion, Pigg v. United States, *supra*, or was an arrest for investigatory purposes. Compare Rodgers v. United States, 362 F.2d 358 (8th Cir.), cert. denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454 (1966); Gatlin v. United States, 117 U.S. App.D.C. 123, 326 F.2d 666 (1963). The facts are such that a reasonably prudent man, independent of evidence obtained in the search, could conclude that the defendant was the person who robbed the savings and loan association.

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

Brinegar v. United States, 338 U.S. at 175, 69 S.Ct. at 1310. See, Jackson v. United States, 408 F.2d 1165 (8th Cir. 1969); Kayser v. United States, 394 F.2d 601 (8th Cir.), cert. denied, 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206 (1968); Gullett v. United States, 387 F.2d 307 (8th Cir. 1967), cert. denied, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968); Dupree v. United States, 380 F.2d 233 (8th Cir. 1967), cert. denied, 392 U.S. 944, 88 S.Ct. 2289, 20 L.Ed.2d 1407 (1968).

■■ The defendant's reliance upon Detective Michel's testimony that "the bullets convinced [him] that [the defendant] was the one who robbed the bank" to establish lack of probable cause is misplaced. When the statement is read in context, it indicates only that the discovery of the bullets only seemed to strengthen the detective's reasonable belief that he had the right man. To the extent that testimony tends to show Detective Michel's state of mind at the time, it is of limited importance. Our primary concern is not with the officer's state of mind but with whether, viewed in retrospect, the objective facts were such as to justify a prudent person in believing that he had enough facts on which to base an arrest before a search was made. Compare, Klingler v. United States, 409 F.2d 299 (8th Cir. 1969), where the officer, having probable cause to arrest for armed robbery, arrested the petitioner on the grounds of vagrancy. There, the Court stated:

> "Because probable cause for an arrest is determined by objective facts, it is immaterial that Kisecker, at the hearing on the motion to suppress, testified that he did not think that he had 'enough facts' upon which to arrest Klingler for armed robbery. His subjective opinion is not material. See, Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A constitutional safeguard predicated on an objective standard requires an even-handed application. From the standpoint of the individual, the figurative zone protecting his privacy and personal integrity may be encroached under the law only by facts and circumstances totaling probable cause for arrest. See, Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Johnson v. United States, 333 U.S. 10, 14, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948). * * *"

409 F.2d at 304.

### TIMING OF THE ARREST

The defendant contends that he was not arrested until after Detective Michel searched him and found the bullets. He relies on the fact that Detective Michel conceded, on cross-examination, that he did not inform the defendant that he was under arrest until he found the bullets on the defendant's person. He argues, from these facts, that even though the police officer had probable cause to arrest him prior to the search, he failed to do so, thus the search cannot be justified as being incidental to arrest.

■ The government contends that the police officer had probable cause to arrest the defendant and the fact that the search may have preceded the formal arrest by a few moments is irrelevant. We believe its position is a sound one.

This Court [4] and other Courts [5] have held, in circumstances somewhat similar to those here, that notwithstanding the fact that a suspect was not formally placed under arrest until after he had been searched, he had in fact been arrested prior thereto because his liberty had been effectively restrained at an earlier time. We could perhaps follow the same reasoning here. Without depreciating in any way the strength of our prior decisions, we decline to do so. We accept the question as it is posed by the defendant and the government.

■■ We hold that where the government sustains its burden of proving that a police officer had probable cause for arresting a suspect for a felony and where it is clear that evidence seized in a contemporaneous search of the suspect's person was in no way necessary to establish probable cause, the search is incidental to the arrest. The search is valid whether it took place moments before or moments after the arresting officer took the suspect into actual custody or announced his intention of so doing. We believe that this holding is support-

ed and suggested by language of the Supreme Court in Husty v. United States, 282 U.S. 694, 700, 51 S.Ct. 240, 241, 75 L.Ed. 629 (1931) : [6]

"The 4th Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. * * * "

and this Court in Reed v. United States, 401 F.2d 756, 761 (8th Cir. 1968) : [7]

"We are not persuaded by the argument that the search was invalid because it preceded the moment when Officer Blythe formally informed the defendant that he was under arrest. According to the evidence the formal declaration was made contemporaneous with or immediately after the shotgun was seized. 'An arrest to be effective does not require formal words of arrest or stationhouse bookkeeping.' * * * "

In our view, the announced rule protects the rights of accuseds and provides a non-technical standard for police to follow. It permits trial courts and reviewing courts to determine whether a search is incidental to a valid arrest by

4. See, Jackson v. United States, 408 F.2d 1165 (8th Cir. March 26, 1969) ; Reed v. United States, 401 F.2d 756 (8th Cir. 1968) ; Schook v. United States, 337 F. 2d 563 (8th Cir. 1964).

5. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Jackson v. United States, supra; Harris v. United States, 389 F.2d 727, 730 (5th Cir. 1968) ; Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308 (1967).

6. However, in Ker v. California, 374 U.S. 23, 43, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726 (1963), the Court stated:
"* * * [W]hile California law does not require that an arrest precede an incidental search as long as probable cause exists at the outset, * * *. The California court did not rely on that rule and we need not reach the

question of its status under the Federal Constitution."

7. This view is also supported by holdings, alternative holdings and dicta in the following cases: Harris v. United States, 389 F.2d 727, 730 (5th Cir. 1968) ; United States v. Gorman, 355 F.2d 151, 159 (2d Cir. 1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966) ; Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965); United States v. Devenere, 332 F.2d 160, 161 (2d Cir. 1964) ; United States v. Boston, 330 F. 2d 937, 939 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964) ; Willson v. Superior Court, 46 Cal.2d 291, 294 P.2d 36 (1956); People v. Simon, 45 Cal.2d 645, 648, 290 P.2d 531, 533 (1955). Contra, United States v. Royster, 204 F.Supp. 760, 762–763 (N.D.Ohio 1961); United States v. Hamm, 163 F.Supp. 4 (E.D.Mo.1958).

**104**

objective standards. It relieves the courts in the proper case of the difficult task of determining the moment at which an arrest takes place, and the even more difficult task of determining the moment at which a police officer intended to make an arrest.

In holding as we do, we expressly negate any intention of relaxing the standards incident to the "probable cause" requirement and reiterate the frequently stated maxim that a search is not to be made legal by what turns up.[8]

Affirmed.

---

8. We specifically approve of the reasoning and holding in White v. United States, 106 U.S.App.D.C. 246, 271 F.2d 829 (1959).