**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Vaughn Dix BAKER and Marianne**
**Ruth DeCora, Defendants.**

**No. CR73–5021.**

United States District Court,
D. South Dakota, W. D.

Feb. 21, 1974.

Edward Carpenter, Asst. U. S. Atty., Joseph M. Butler, Rapid City, S. D., Carleton R. Hoy, Sioux Falls, S. D., Ronald W. Banks, Rapid City, S. D., for plaintiff.

Joseph Beeler, Chicago, Ill., John E. Thorne, San Jose, Cal., Kenneth J. Enkel, Robert D. Metcalf, Minneapolis, Minn., Clyde C. Henning, Rockville, Md., for defendants.

## MEMORANDUM OPINION ON MOTIONS TO SUPPRESS

URBOM,* Chief Judge.

On February 27, 1973, on the Pine Ridge Indian Reservation, a few miles from Wounded Knee, South Dakota, two vehicles were stopped for identification purposes by a police officer, who formed a one-man road block. The two vehicles were an International Travelall and a 1963 Ford automobile. Almost immediately after the vehicles were stopped, four other law enforcement officers arrived at the place where the vehicles had been stopped, alighted from their car, and warrantless searches of the International Travelall and the 1963 Ford ensued. The propriety of the search of the 1963 Ford is the subject of the present motions to suppress in a case in which the two occupants of the Ford have been charged with burglary and larceny. More specific facts will be stated as needed throughout the remainder of this opinion.

In terms of the sequence of events immediately preceding the actual search, the first legal question is whether the 1963 Ford justifiably was halted for what may be called an investigatory stop or a "stop and frisk" under the doctrine of Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1967). The legal standard was set in that case in the following words:

"And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . And . . . it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the [stopping] . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

Probable cause for arrest or for a general exploratory search need not be present and the existence of suspicious circumstances or unusual conduct suggestive of possible criminal activity is sufficient to warrant such a stopping and a limited search of the person or the immediate vicinity of the person for the officer's protection. United States v. Harflinger, 436 F.2d 928 (C.A. 8th Cir. 1970).

In my view of the facts, there here was a sufficiently suspicious set of circumstances to warrant an investigative stop of both vehicles. Earlier in the day an assemblage of perhaps 50 to 75 automobiles was at Calico Hall at a settlement at least 15 miles west of Wounded Knee and at least 22 miles from the place where the stopping occurred. A caravan of cars left Calico Hall and drove into Wounded Knee, some of them carrying red banners signifying a connection with the American Indian Movement. Shooting had occurred within Wounded Knee and James W. Dick, the agent who searched the 1963 Ford, had been told that there had been a takeover of the village of Wounded Knee and looting of the Wounded Knee Trading Post. He, as an F.B.I. agent, and three other law enforcement officers, had been dispatched to set up a road block north of

* Warren K. Urbom, Chief Judge, U.S.D.C.Neb., sitting by designation.

Wounded Knee and were going there by a somewhat circuitous route from a position south of Wounded Knee by way of a road east of Wounded Knee to their destination north of Wounded Knee. Enroute on a dirt road about seven miles east of Wounded Knee, Dick saw the headlights of the Travelall and the Ford approaching from the north, traveling south. As they passed, he recognized the Travelall as one he had seen on previous occasions in Rapid City, South Dakota, and on February 27 at Calico Hall. He orally relayed that information to the driver of the automobile in which he was riding, whereupon the car turned around and followed the Travelall and the 1963 Ford at a moderate speed. At a junction at which south-bound vehicles either could jog slightly to the east and proceed south, or could turn east and continue proceeding east, or could turn west toward Wounded Knee, the Travelall, which bore out-of-state license plates, and the Ford were stopped by Darwin Coats, a Tribe policeman. Coats had been stationed there to check out-of-state cars and had been told by radio from the Bureau of Indian Affairs police headquarters to be on the lookout for an International Travelall. Coats had begun to ask the driver of the Travelall for identification when the car containing Dick and the three other officers pulled up to the scene, and two of those officers went to the Travelall and Dick went to the driver's side of the Ford. There Dick identified himself to the occupants of the car and then heard from Larry McGee, one of the F.B.I. agents at the Travelall, that McGee was ordering the people out of the Travelall and that McGee had discovered some weapons in the Travelall. Dick then ordered the occupants of the Ford out of the car. He noted that the Ford car had a red streamer hanging from the radio antenna. He frisk-searched both occupants, who were the defendants, Vaughn Dix Baker and Marianne Ruth DeCora, although he had not yet obtained their names. Dick then undertook a search of the vehicle, finding in the back seat a brown leather purse and inside the purse he found ammunition, a cassette recording tape in a cellophane package partially sealed, a microphone that appeared to be from a small portable tape recorder, and several silver bracelets of which some had stickers with prices on them and the words "Wounded Knee Trading Post" on them. He then searched the rest of the interior of the car and the trunk. Radio communication was then had to Special Agent in Charge Trimback, who was not at the scene and who directed that the occupants of the Ford and of the Travelall be arrested for burglary and larceny. All were then formally arrested. I am of the opinion that these circumstances, insofar as they existed immediately before the stopping of the vehicles, were sufficiently suspicious to permit Coats to stop both automobiles merely for identification and questioning. Dick's assumption of the identifying and questioning of the Ford occupants was not unreasonable. See Orricer v. Erickson, 471 F.2d 1204 (C.A. 8th Cir. 1973).

The scope of a search incident to an investigative stop is severely limited. An officer permissibly may make a "limited search of the suspect for weapons," and the mere suspicion which justifies the investigative stop may ripen into probable cause for arrest because of information gained during the questioning and the search of the suspect for weapons. Orricer v. Erickson, supra. Here, however, the search for weapons, which properly was by a frisk of the outer garments of the defendants revealed nothing and there was no questioning before agent Dick conducted a full search of the automobile. Searching the back seat of the car and the contents of a purse found there, as well as the remaining search of the automobile, was not justified as a part of the investigative stop.

Other justifications for the warrantless search of the automobile must be explored. The four generally recognized exceptions to the requirement that search of an automobile must be pursu-

ant to a valid warrant are: (1) the plain view doctrine, (2) protection of the public from a weapon reasonably believed to be in the automobile, (3) a search incident to a lawful arrest, and (4) the existence of exigent circumstances.

■ As to the plain view doctrine, it is clearly inapplicable with respect to the search of the Ford, because it is relevant only when the discovery of evidence is inadvertent in the course of some other valid search. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). No such inadvertence existed here, nor was there some other valid search in progress by Dick.

■ As to the exception relating to the protection of the public from a weapon, it applies where the officer has reason to believe that a weapon is in the automobile and the automobile is in the custody of the police. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In the present case, the automobile was not in the custody of the officer or officers and from the evidence adduced I can find no basis for a conclusion that agent Dick had reason to believe a weapon was in the Ford.

■ A search may be warrantless if it is incident to a lawful arrest, and the exact sequence of the arrest and the search is immaterial. United States v. Taylor, 428 F.2d 515 (C.A. 8th Cir. 1970); United States v. Skinner, 412 F.2d 98 (C.A. 8th Cir. 1969). In such circumstance there can be no justifiable search unless the warrantless arrest is made upon probable cause. A discussion of whether there was probable cause for an arrest is deferred until a later time in this memorandum.

■ The fourth exception to the general rule that a search must be pursuant to a valid warrant arises from the mobility of the automobile and was first declared in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Within the meaning of that case and its progeny I have no doubt that the mobility of the car at the time it was searched justified the warrantlessness of the search. No reasonable opportunity for obtaining a warrant for making the search existed, the nearest magistrate being in Rapid City, approximately 100 miles away. Nevertheless, the propriety of such a warrantless search must be tested not only by the mobility of the automobile but the existence of probable cause to make the search.

■ Probable cause to search an automobile is also to be determined by the standard of what a reasonable person in the circumstances would conclude from the objective facts. Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The matter is one of probabilities, rather than certainties. Dyke v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), states it this way:

"The cases . . . have . . . always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

Thus, the task here is to determine whether from the objective facts known to agent Dick immediately before the search began, a reasonable person would conclude that the probabilities were that the 1963 Ford contained evidence of a crime. The courts must always be aware that in the tense moments of an investigation in the search of an automobile the searching officer has little opportunity for reflection and it is understandable that an officer whose duty is to seek and find evidence of present or past criminal conduct sometimes makes decisions which upon studied hindsight are recognized as having been based upon suspicion not amounting to proba-

ble cause. I am compelled to conclude that in the present case that is what happened.

■ Suspicions that occupants of the 1963 Ford *might have been* participants in the activities at Wounded Knee were justified. Viewed objectively, however, it cannot reasonably be said that they *probably* were participants or that anything from a looting of the Trading Post at Wounded Knee *probably* was in that automobile. Agent Dick had seen the Travelall in Rapid City and at Calico Hall, but had no information from which he reasonably could conclude that the 1963 Ford had been at Calico Hall or in Wounded Knee at any time. Only two facts lent the slightest support for a connection between the Ford and Wounded Knee: the presence of a red streamer suggesting an alliance with the American Indian Movement and the Ford's being driven a short distance behind the International Travelall at the time agent Dick saw it shortly before it was stopped. But these constitute too slender a thread. The presence of some automobiles at a meeting at Calico Hall earlier in the day carrying red streamers does nothing more than raise a suspicion that this particular vehicle, now at least 22 miles from Calico Hall, was at Calico Hall earlier in the day. To build from that suspicion, coupled with the fact that the car was being driven behind another vehicle which had been at Calico Hall, a conclusion that the Ford went from Calico Hall to Wounded Knee and its occupants there participated in a crime, involves too much speculation to reach the standard of probable cause to search the automobile for evidence of crime.

The location and direction of travel of the Ford immediately before the stop are no more suggestive that the car was proceeding from Wounded Knee than that it was going to Wounded Knee or to or from any other of several communities and locations in the western part of South Dakota. The road did not lead directly to or from Wounded Knee, nor did agent Dick have any reason to suppose that it did, particularly because he was totally unfamiliar with the roads and trails in that area.

■ Precisely these same facts bear upon the right to arrest. Probable cause to arrest requires a higher degree of probability than does probable cause to search. Miller v. Sigler, 353 F.2d 424 (C.A. 8th Cir. 1965); United States v. Taylor, 428 F.2d 515 (C.A. 8th Cir. 1970). Agent Dick did not have sufficient evidence before the search to permit a reasonable man to conclude that the occupants probably had committed or were committing a crime. Therefore, the search cannot be said to have been incident to a valid arrest.

■ The government has cited United States v. Chalk, 441 F.2d 1277 (C.A. 4th Cir. 1971), for a principle that searches and seizures may be made on something less than usual probable cause concepts where there is massive civil disorder. In that case 200 to 250 students had been engaged in a clash with police, involving throwing of rocks and other missiles, resulting in injury to persons and damage to property. The mayor of the city, in accordance with extraordinary powers granted him by state statute, declared that a state of emergency existed and ordered a nighttime curfew and banned possession of weapons off one's own premises, sale and consumption of liquor, and holding of marches, assemblies and demonstrations. The defendant was arrested for violation of the curfew and his automobile searched. The search was upheld as being on probable cause and under the plain view doctrine. Additionally, the authority of the mayor to issue the proclamation was upheld, even where such proclamation resulted in restrictions which normally would be unconstitutional.

The idea that actions otherwise unconstitutional may be rightful in the face of massive civil disorder is not doubted by this court. No case has been cited or found, however, which permits law enforcement officers to act in a manner

**108**

which, absent a civil disorder, would be unconstitutional, until a declaration of an emergency has been made by an executive authorized by law to make such a declaration. No such declaration was made by anyone, so far as the evidence shows, on or before the time of the search and seizure involving the present defendants. I conclude that the standards of probable cause to arrest and to search are not diminished merely because law enforcement officers believe, reasonably or not, that a civil disorder exists.

Accordingly, the motions to suppress are granted to the extent that they seek suppression of items taken from the 1963 Ford automobile on February 27, 1973, and those items are not to be used in the trial of this action.

