# District of Columbia
# Court of Appeals

No. 13-CO-1456

UNITED STATES,

Appellant,



FILED

SEP 29 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CF2-10190-13

DAVID D. LEWIS,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: WASHINGTON, *Chief Judge*; and GLICKMAN, FISHER, BLACKBURNE-RIGSBY, THOMPSON, BECKWITH, EASTERLY and MCLEESE, *Associate Judges*.

OPINION FOR THE COURT BY MCLEESE, *Associate Judge*; joined by GLICKMAN, FISHER, BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*.

DISSENTING OPINION BY BECKWITH, *Associate Judge*; joined by WASHINGTON, *Chief Judge*; and EASTERLY, *Associate Judge.*

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the matter on appeal is reversed and remanded for further proceedings.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: September 29, 2016.

Opinion by Associate Judge Roy W. McLeese.

Dissenting opinion by Associate Judge Corinne Beckwith.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CO-1456

UNITED STATES, APPELLANT,

v.

DAVID D. LEWIS, APPELLEE.

FILED 9/29/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-10190-13)

(Hon. Robert I. Richter, Trial Judge)

(Argued En Banc June 30, 2015                    Decided September 29, 2016)

*David B. Goodhand*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *Christian Natiello*, Assistant United States Attorneys, were on the brief, for appellant.

*Joshua Deahl*, Public Defender Service, with whom *James Klein* and *Samia Fam*, Public Defender Service, were on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, and GLICKMAN, FISHER, BLACKBURNE-RIGSBY, THOMPSON, BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

Opinion for the court by *Associate Judge* MCLEESE, joined by GLICKMAN, FISHER, BLACKBURNE-RIGSBY, and THOMPSON, *Associate Judges*.

Dissenting opinion by *Associate Judge* BECKWITH, joined by WASHINGTON, *Chief Judge*, and EASTERLY, *Associate Judge*, at page 38.

MCLEESE, *Associate Judge*: The United States seeks review of the trial court's pretrial order suppressing evidence as fruit of an unlawful search under the Fourth Amendment. D.C. Code § 23-104 (a)(1) (2012 Repl.). We reverse and remand for further proceedings.

**I.**

The evidence presented at the suppression hearing indicated the following. At approximately 2 a.m. on June 16, 2013, United States Park Police Officer Michael Alto was driving on Ingraham Street NW when he saw appellee David Lewis driving a car with a non-functioning headlight. While following the car, Officer Alto determined that the car was registered to Mr. Lewis and that Mr. Lewis had a suspended license. Mr. Lewis drove a couple of blocks, pulled over into a parking spot, and started to get out of the car. Officer Alto pulled up and asked Mr. Lewis for his license and registration. Mr. Lewis opened the car door, enabling Officer Alto to see an open bottle of Patrón tequila in the center-console cup holder. The bottle was half full. Mr. Lewis's passenger, Brittney Gibbs, said that the bottle was hers. Officer Alto told Ms. Gibbs to bring him the bottle, which Ms. Gibbs did by walking around the car and handing the bottle to Officer Alto.

After confirming that Mr. Lewis's license had been suspended, Officer Alto put Mr. Lewis in handcuffs. Officer Alto did not smell any alcohol coming from Mr. Lewis or Ms. Gibbs. A second officer, Officer Brown, arrived on the scene, and Officer Alto asked her to search the car for additional open containers of alcohol. In Officer Alto's experience, "the majority of times when there is a tequila or liquor type of beverage in a vehicle, they'll be drinking through cups." Similarly, in Officer Brown's experience, people very rarely drink directly out of Patrón bottles and instead usually use cups. The officers decided to search the car, both for additional evidence of the offense of possession of an open container of alcohol (POCA) and because it was possible that Ms. Gibbs could have been permitted to drive the car away afterward, and the officers therefore wanted to make sure that there was no additional alcohol or other contraband in the vehicle.

At the time Officer Brown arrived, Ms. Gibbs was outside the vehicle, saying that she needed to go to the bathroom. Officer Brown told Ms. Gibbs that she could not leave. Officer Brown opened the driver-side door and smelled marijuana. Officer Brown found a cup containing liquid that smelled like alcohol on the floor of the front passenger seat, and Ms. Gibbs said that the cup was hers.

Officer Brown also found a loaded handgun and a box of ammunition in a bag on the back seat. Finally, Officer Brown found a cigarette containing a green plant-like substance in the passenger-side door.

According to Officer Brown, Ms. Gibbs was not under arrest at the time the search of the car began. Once Officer Brown found the gun, she placed Ms. Gibbs in handcuffs. A subsequent search revealed a bag of marijuana in Ms. Gibbs's bra. Ms. Gibbs was arrested for POCA and possession of marijuana. Mr. Lewis was arrested for carrying a pistol without a license, possession of an unregistered firearm, possession of unregistered ammunition, and operating a vehicle with a suspended license.

The trial court granted Mr. Lewis's motion to suppress evidence of the gun, the ammunition, and the marijuana, concluding that the officers did not have reasonable, articulable suspicion to search the vehicle for evidence of POCA. A division of this court concluded to the contrary that the officers had reasonable, articulable suspicion that there was evidence of POCA in the car. *United States v.*

*Nash*, 100 A.3d 157, 164-65 (D.C. 2014).[1] The division further concluded that the search of the car was lawful as incident to Ms. Gibbs's arrest, even though the officers did not place Ms. Gibbs under arrest until after the search and it was not clear whether the officers had at the time of the search intended to arrest Ms. Gibbs. *Id.* at 165-68. The en banc court granted rehearing limited to the question whether the search was lawful as incident to Ms. Gibbs's arrest. *United States v. Lewis*, 107 A.3d 603 (D.C. 2015) (en banc).

## II.

When reviewing a trial court's denial of a motion to suppress, we "view the evidence in the light most favorable to the prevailing party." *Bennett v. United States*, 26 A.3d 745, 751 (D.C. 2011) (internal quotation marks omitted). We draw all reasonable inferences in favor of upholding the trial court's ruling. *Milline v. United States*, 856 A.2d 616, 618 (D.C. 2004). We review the trial court's legal conclusions de novo. *United States v. Taylor*, 49 A.3d 818, 819 (D.C. 2012).

---

[1] Before the division, Mr. Lewis's case was consolidated with a factually unrelated case, *United States v. Nash*, No. 13-CO-1299. *United States v. Nash*, 100 A.3d at 159-60. The division affirmed the trial court's suppression order in Mr. Nash's case. *Id.* at 162-64. The current proceeding before the en banc court involves only Mr. Lewis's case.

"A search conducted without a warrant is per se unreasonable under the Fourth Amendment unless it falls within a few specific and well-established exceptions." *Taylor*, 49 A.3d at 821 (internal quotation marks omitted). Under one such exception, police officers may conduct a warrantless search of a vehicle, incident to an arrest, if they have reasonable, articulable suspicion to believe that the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 351 (2009). The issue before this court en banc is whether such a search, which we will refer to as a *Gant* evidence search, is lawful if (a) the search precedes the arrest for the offense at issue; and (b) it is unclear whether the officers intended to arrest the suspect before conducting the search. Although the issue has not yet arisen with much frequency, as far as we are aware every court to have considered the issue has upheld the validity of such searches. *See, e.g.*, *State v. Fizovic*, 770 S.E.2d 717, 720-22 (N.C. Ct. App. 2015) (*Gant* evidence search of suspect's car was lawful even though suspect was not arrested until after search and officer did not intend to arrest at time of search). The same issue has arisen in the context of other types of search incident to arrest, and the overwhelming weight of authority upholds the legality of such searches even when conducted before an arrest and in the absence of evidence that the officers subjectively intended to arrest the defendant at the time of the search. *See, e.g.*, *State v. J.J.*, 143 So. 3d 1050, 1052 (Fla. Dist. Ct. App. 2014) (per curiam) (upholding search as

lawful incident to arrest where search preceded arrest and where officer explained search as based on officer safety; no indication that officer intended to arrest at time of search); *People v. Nguyen*, 854 N.W.2d 223, 232-34 (Mich. Ct. App. 2014) (police lawfully searched suspect's person incident to arrest, even though search preceded arrest and officers did not believe they had probable cause to arrest at time of search), *appeal denied*, 863 N.W.2d 327 (Mich. 2015); *State v. Sykes*, 695 N.W.2d 277, 282-87 (Wis. 2005); *Moffitt v. State*, 817 N.E.2d 239, 246 (Ind. Ct. App. 2004); *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) ("In order to be a legitimate 'search incident to arrest,' the search need not take place after the arrest. A warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search. Whether or not the officer intended to actually arrest the defendant at the time of the search is immaterial to this two-part inquiry.") (citations omitted). *But see People v. Reid*, 26 N.E.3d 237, 239-40 (N.Y. 2014) (search of suspect's person was not lawful incident to arrest because, at time of search, suspect had not been arrested and officer had no intent to arrest suspect).

We hold that a *Gant* evidence search is lawful if (a) the police have probable cause to arrest the suspect for an offense; (b) the suspect recently occupied a

vehicle; (c) the police have reasonable, articulable suspicion to believe that the vehicle contains evidence of the offense; (d) at the time of the search, the police have not released the suspect or issued the suspect a citation for the offense; and (e) the suspect's formal arrest for the offense follows quickly on the heels of the search.[2]

## A.

We turn first to whether a *Gant* evidence search may precede the arrest of the suspect. The Supreme Court did not decide that question in *Gant*. In *Rawlings v. Kentucky*, 448 U.S. 98 (1980), however, the Supreme Court addressed the same question in connection with the search of a defendant's person incident to arrest, stating that "[w]here the formal arrest follow[s] quickly on the heels of the challenged search of [a suspect's] person, we do not believe it particularly

---

[2] By upholding the legality of *Gant* evidence searches in the circumstances stated in text, we do not mean to imply that all other *Gant* evidence searches would necessarily be unlawful. For example, we express no view on the question whether an otherwise lawful *Gant* evidence search would be rendered unlawful if the suspect fled from the police after the search and before the police placed the suspect under arrest. On a separate point, the dissent asserts that we decide the case on a basis "which neither party meaningfully briefed." To the contrary, the parties extensively briefed the issues we decide.

important that the search preceded the arrest rather than vice versa." 448 U.S. at 111. Although *Rawlings* refers to both "formal arrest" and "arrest," *id.*, the lower courts, including this court, have consistently understood the rule announced in *Rawlings* to apply without regard to any distinction between formal arrest and arrest. *See, e.g.*, *Millet v. United States*, 977 A.2d 932, 935 (D.C. 2009) ("A search incident to arrest may precede the actual arrest if probable cause exists, independent of the search, to justify the arrest, and if the arrest follows quickly on the heels of the search.") (internal quotation marks omitted); *United States v. Powell*, 376 U.S. App. D.C. 30, 32-33, 483 F.3d 836, 838-39 (2007) (en banc) ("where police had probable cause to arrest before search, it was of no import that the search came before the actual arrest") (internal quotation marks omitted; citing cases).

The Supreme Court in *Rawlings* did not explain its reasons for holding that a search incident to arrest may permissibly precede arrest, but the lower courts have identified at least three. First, permitting search to precede arrest will in some cases benefit innocent suspects, because if the results of the search negate probable cause or persuade the officer not to arrest, the suspect will be spared the greater intrusion and collateral consequences of an arrest. *See, e.g.*, *State v. Overby*, 590 N.W.2d 703, 706 (N.D. 1999) ("[I]f the person searched is innocent and the search

convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested.") (internal quotation marks omitted). Second, in cases in which arrest is inevitable, whether search precedes or follows arrest does not affect the degree of the intrusion on the suspect. *Id.* Third, courts are reluctant to micromanage the precise order in which officers who have probable cause to arrest conduct searches and arrests, particularly given the safety and other tactical considerations that can be involved. *See, e.g.*, *Anderson v. State*, 553 A.2d 1296, 1301-02 (Md. Ct. Spec. App. 1989).

Lower courts, including this court, have applied *Rawlings* broadly, upholding searches that preceded arrest in cases involving *Gant* evidence searches, searches to protect officer safety or prevent destruction of evidence, searches of a suspect's person, and searches of a vehicle. *See, e.g.*, *Powell*, 376 U.S. App. D.C. at 33, 483 F.3d at 839 (upholding search of car incident to arrest where suspect had not been arrested at time of search; "Indeed, every circuit that has considered the question-save one-has concluded that a search incident to arrest may precede the arrest.") (citing cases); *State v. Smith*, 266 P.3d 1220, 1224 (Idaho Ct. App. 2011) (upholding *Gant* evidence search of car where suspect had not been arrested at time of search); *Adams v. State*, 815 So. 2d 578, 582 (Ala. 2001) (upholding search of person incident to arrest where suspect had not been arrested at time of search

but probable cause existed and arrest was "sufficiently contemporaneous"); *Minnick v. United States*, 607 A.2d 519, 525 n.11 (D.C. 1992) (search of purse taken from car lawful as search incident to arrest even though search preceded arrest; citing *Rawlings*); *cf., e.g.*, *Waters v. United States*, 311 A.2d 835, 836 (D.C. 1973) ("It is well settled, however, that a search or seizure may precede an arrest, provided the officer at that point already has probable cause to arrest the possessor of the items in question.").

Mr. Lewis does not appear to dispute that a *Gant* evidence search can be lawful even if the search is conducted before arrest, as long as an arrest is under way. Some of Mr. Lewis's arguments, however, seem to imply more broadly that a completed arrest must precede a *Gant* evidence search. In any event, we hold that, as the Supreme Court concluded in *Rawlings*, it is sufficient that the arrest follows quickly after the search.

Most broadly, Mr. Lewis relies on the Supreme Court's statements that "[i]t is the fact of the lawful arrest that establishes the authority to search" incident to arrest. *E.g.*, *United States v. Robinson*, 414 U.S. 218, 235 (1973). For several reasons, we do not understand this language to establish a rule that the arrest must precede a search incident to arrest. First, in the cases relied upon by Mr. Lewis the

Supreme Court was not actually addressing the question whether a lawful search incident to arrest must follow the arrest. *See, e.g.*, *Robinson*, 414 U.S. at 234-35 (holding that police may lawfully conduct full search of arrestee's person incident to arrest, even in absence of case-specific basis for search). Both the Supreme Court and this court have cautioned against treating such language as a dispositive holding. *See, e.g.*, *United States v. Debruhl*, 38 A.3d 293, 298 (D.C. 2012) ("We have stressed, however, that *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.") (internal quotation marks omitted); *Porter v. United States*, 37 A.3d 251, 265 n.20 (D.C. 2012) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). Second, as previously noted, Mr. Lewis himself appears to concede that, despite the language upon which he relies, a completed arrest need not precede a search incident to arrest, as long as an arrest is under way. Third, interpreting that language to require an arrest to precede the search would contradict *Rawlings*.[3]

---

[3] For similar reasons, we are unpersuaded by Mr. Lewis's reliance on language in Justice Scalia's concurring opinion in *Thornton v. United States*, 541 U.S. 615 (2004), stating that permitting searches for evidence incident to arrest is justified because the "fact of prior lawful arrest" distinguishes arrestees from society at

(continued…)

On the last point, Mr. Lewis argues that the Supreme Court's statement in *Rawlings* is dictum. It is true, as Mr. Lewis points out, that the defendant in *Rawlings* did not argue in the Supreme Court that a lawful search incident to arrest must follow arrest. Brief and Reply Brief for Petitioner, *Rawlings v. Kentucky*, 448 U.S. 98 (1980) (No. 79-5146), 1980 WL 339599, 339603. Nevertheless, the Supreme Court's statement in *Rawlings* is now deeply entrenched in the law. It has been cited, and treated as a holding, in many lower-court decisions, including several decisions of this court. *See, e.g.*, *Minnick*, 607 A.2d at 525 n.11; *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) ("[A]s the Supreme Court held in [*Rawlings*], the search-incident-to-a-lawful-arrest rule also permits an officer to conduct a full search of an arrestee's person before he is placed under lawful custodial arrest as long as the formal arrest follows quickly on the heels of the challenged search of his person and the fruits of that search are not necessary to sustain probable cause to arrest him.") (brackets, ellipses, and internal quotation

---

(…continued)

large and distinguishes searches for evidence of the crime of arrest from general rummaging. 541 U.S. at 630. Moreover, although the opinion for the Court in *Gant* did adopt the general approach advocated by Justice Scalia in his concurring opinion in *Thornton*, *see Gant*, 556 U.S. at 343-44, the opinion for the Court in *Gant* did not use the word "prior" in stating its holding. *Id.* On that point, we take our guidance from the opinion for the Court in *Gant* rather than the concurrence in *Thornton*.

marks omitted). We have located no case in which a court has treated the statement as dictum. Moreover, well before the decision in *Rawlings*, the courts in this jurisdiction had adopted the principle that "a search or seizure may precede an arrest, provided the officer at that point already has probable cause to arrest the possessor of the items in question." *Waters*, 311 A.2d at 836 (citing *Bailey v. United States*, 128 U.S. App. D.C. 354, 357, 389 F.2d 305, 307 (1967)). Taken together, these considerations preclude this court from disregarding the principle announced by the Supreme Court in *Rawlings*. *Cf., e.g.*, *State v. Rose*, 19 A.3d 985, 1012 n.21 (N.J. 2011) ("Without exploring the intricate distinctions between dictum and language necessary to decision, we conclude that we must recognize the clear, direct, explicit, and unqualified statement of the Supreme Court.") (quoting *Public Serv. Co. v. General Elec. Co.*, 315 F.2d 306, 310 n.6 (10th Cir. 1963)); *Majette v. New London Hous. Auth.*, No. X094CV0450000090S, 2005 WL 3112738, *5 (Conn. Super. Ct. Nov. 3, 2005) (although plaintiff argued that language from decision of Connecticut Supreme Court was dictum, "the 'dictum' has become more or less entrenched as black letter law"); *Tony Andreski, Inc. v. Ski Brule, Inc.*, 475 N.W.2d 469, 473 (Mich. Ct. App. 1991) (Griffin, J., concurring) ("While one could argue that the statements in [an earlier decision of the Michigan Supreme Court] were mere dicta, the doctrine is too firmly entrenched to be overruled by this intermediate appellate court.").

Somewhat more narrowly, Mr. Lewis argues that the Supreme Court's statement in *Rawlings* must be understood in context. Specifically, Mr. Lewis argues that an arrest was under way at the time of the search in *Rawlings*, and that *Rawlings* thus should not be read to authorize searches incident to arrest unless an arrest is at least under way. We conclude otherwise. Although it is not entirely clear what Mr. Lewis means by the term "under way," Mr. Lewis appeared to take the position at oral argument that an arrest is under way as long as, at the time of the search, the officers intend to transport the suspect to the police station for the purpose of charging the suspect with a crime, even if the officers have not communicated their intent in any way. On that view, the question whether an arrest was under way collapses into the question whether the officers subjectively intended to place the suspect under arrest. For reasons that we explain *infra*, however, we conclude that such an inquiry into officers' subjective intent is foreclosed by controlling decisions of the Supreme Court.

Mr. Lewis also suggests in a footnote that the temporal flexibility provided by *Rawlings* should not be extended to *Gant* evidence searches. We disagree. As we have already noted, every court of which we are aware to have addressed the question has applied *Rawlings* to *Gant* evidence searches. *See, e.g.*, *Smith*, 266

P.3d at 1224. Moreover, each of the justifications for the *Rawlings* rule applies to *Gant* evidence searches: permitting such searches to precede arrest in some instances will benefit suspects, because the results of the search may lead to release rather than the arrest that otherwise would have occurred; as to suspects who are going to be both searched and arrested, the order of those events does not affect the degree of the intrusion; and tactical considerations may lead officers to reasonably prefer to conduct a *Gant* evidence search before completing an arrest.

In sum, we hold that a *Gant* evidence search can be lawful even if the search precedes arrest.

**B.**

We turn next to the question whether the search in this case was lawful even though it is unclear whether, at the time of the search, the officers intended to arrest Ms. Gibbs. Based on controlling Supreme Court authority, we conclude that the search was lawful.

The Supreme Court's "Fourth Amendment cases have repeatedly rejected a subjective approach. Indeed, [the Supreme Court has] never held, outside limited

contexts such as an inventory search or administrative inspection, that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." *Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014) (citation, ellipses, and internal quotation marks omitted); *see also, e.g.*, *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080-81, 2083 (2011) (Supreme Court has "rejected every request to examine subjective intent" in Fourth Amendment setting, with exception of (a) special-needs searches, (b) administrative searches, and (c) searches conducted in absence of individualized suspicion); *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances viewed objectively, justify the action. . . . The officer's subjective motivation is irrelevant.") (brackets, emphasis, and internal quotation marks omitted); *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004) ("As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent. Evenhanded law enforcement is best achieved by the application of objective standards of conduct,

rather than standards that depend upon the subjective state of mind of the officer.") (brackets, citations, and internal quotation marks omitted).

*Gant* evidence searches rest on particularized suspicion, because they require not only probable cause to arrest but also reasonable, articulable suspicion to believe that the vehicle to be searched contains evidence of the offense of arrest. *Gant*, 556 U.S. at 351. Under controlling Supreme Court law, the legality of such searches thus must be determined based on the objective circumstances, not on whether at the time of the search the officers subjectively intended to arrest the suspect. *Cf. Peters v. New York*, 392 U.S. 40, 66-68 (1968) (upholding search as lawful search incident to arrest; no direct evidence that officers subjectively intended to arrest suspect at time of search); *id.* at 68-69 (Douglas, J., concurring); *id.* at 70 (Fortas, J., concurring); *id.* at 79 (Black J., concurring).

We are not persuaded by Mr. Lewis's arguments to the contrary. First, Mr. Lewis argues that *Gant* evidence searches necessarily require inquiry into officers' subjective intent, because the legality of such searches depends on the offense of arrest, which in turn depends on the subjective decision of a particular officer. The Supreme Court did not explain in *Gant* how courts should determine the offense of arrest for purposes of assessing the legality of a *Gant* evidence search. We need

not delve into that issue in the present case, because Mr. Lewis does not dispute that there was a prompt arrest for POCA. We do note, however, that it is not clear that the inquiry must be subjective in character. *Cf., e.g.*, *Devenpeck*, 543 U.S. at 154 (in determining whether there was probable cause to support arrest, courts are not limited to subjective grounds stated by officer). We thus do not understand *Gant* to have implicitly required a subjective inquiry into whether the officers intend to arrest at the time they conduct a *Gant* evidence search.

Second, contrary to Mr. Lewis's contention, *Knowles v. Iowa*, 525 U.S. 113 (1998), is consistent with an objective approach. In *Knowles*, a police officer stopped Mr. Knowles for speeding. 525 U.S. at 114. The officer issued Mr. Knowles a citation even though the officer could have arrested Mr. Knowles under Iowa law. *Id.* The officer then searched Mr. Knowles's car, recovered a bag of marijuana and a pipe, arrested Mr. Knowles, and charged Mr. Knowles with drug offenses. *Id.* The Supreme Court ruled that the officer had conducted an illegal "search incident to citation" rather than a search incident to arrest. *Id.* at 116-19. *Knowles* turned on two objective circumstances. First, at the time of the search at issue, the suspect had been issued a citation rather than arrested. Second, "no further evidence of excessive speed was going to be found either on the person of the offender or in the offender's car." *Id.* at 118. The *Knowles* Court never

mentioned the officer's subjective intent and in no way suggested that the Court was adopting a novel exception to its general rule against consideration of subjective intent in determining the Fourth Amendment reasonableness of searches based on particularized suspicion.

We recognize that, under an objective approach, officers who have probable cause to arrest for a minor crime for which they would not ordinarily make an arrest might be tempted to conduct a *Gant* evidence search and then decide, depending on the results of the search, whether in fact to arrest. On the other hand, under the approach advocated by Mr. Lewis, officers who want to conduct a *Gant* evidence search might be tempted to arrest suspects for petty crimes, when they would not otherwise have done so, in order to permit such a search. It thus is unclear that the approach advocated by Mr. Lewis would be more protective of suspects' interests. In any event, the Supreme Court has held that comparable "concerns about improper motives and pretext do not justify subjective inquiries" in the context of searches and seizures resting on particularized suspicion. *Al-Kidd*, 131 S. Ct. at 2082. For example, the Court held in *Al-Kidd* that federal officials had lawfully detained terrorism suspects under the federal material-witness statute even if those officials did not intend to call the suspects as witnesses, as long as there was an objective basis for the detention. 131 S. Ct. at

2082-84.  And in *Brigham City*, the Court held that officers may enter a home, the most protected area under the Fourth Amendment, if they have a reasonable belief that someone is in danger inside, even if the officers' subjective intent is to gather evidence or arrest suspects rather than to provide aid.  547 U.S. at 405-06.

In sum, we hold that the legality of a *Gant* evidence search does not depend on whether the officers intended to arrest the suspect at the time of the search at issue.

### C.

Mr. Lewis makes four additional arguments, which we address in turn. First, Mr. Lewis relies on the Supreme Court's statements that "an incident search may not precede an arrest and serve as part of its justification."  *Sibron v. New York*, 392 U.S. 40, 63 (1968).  Under the approach we adopt, however, the search does not provide any part of the legal justification for the arrest.  Rather, the arrest must be justified by preexisting probable cause.

Second, Mr. Lewis argues that a search cannot be incident to an arrest if the search is the cause of the arrest.  *See State v. Funkhouser*, 782 A.2d 387, 409 (Md.

Ct. Spec. App. 2001) (decision to arrest cannot be a "consequence of what was found in the search"). The Supreme Court, however, has never suggested such a principle. Moreover, such a principle would be inconsistent with the objective approach that the Supreme Court has required in contexts involving particularized suspicion.

Third, Mr. Lewis argues that, because a search must be justified at its inception, it is impermissible for subsequent events to affect the lawfulness of a search. It is true that, under the approach we adopt, the admissibility of evidence obtained during a *Gant* evidence search may depend on events that take place after the search. But that is not unique to the current setting. For example, if officers executing a search warrant act within the warrant at first but then flagrantly exceed the scope of the warrant, all of the evidence seized may be subject to suppression. *Cf., e.g.*, *In re 650 Fifth Ave. & Related Props.*, No. 14-2027, 2016 WL 3913403, *22 n.32 (2d Cir. July 20, 2016) ("[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search, unless it is shown that those executing the warrant acted in flagrant disregard of the warrant's terms.") (internal quotation marks omitted); *State v. Rindfleisch*, 857 N.W.2d 456, 465 (Wis. Ct. App. 2014) (same). Thus, evidence obtained during a course of conduct that is lawful at its inception

can become inadmissible based on subsequent events. That is the situation with *Gant* evidence searches. They are lawful at their inception if supported by probable cause to arrest and reasonable, articulable suspicion that evidence of the offense of arrest is in the vehicle being searched, but the evidence obtained in such searches may become inadmissible based on subsequent events.

Finally, Mr. Lewis argues that his approach would give clearer guidance to law enforcement than the approach we adopt. We disagree. Mr. Lewis's approach raises many questions. At the most basic level, it is unclear when an arrest should be viewed as under way or what it would mean to require that the officers intend to arrest the suspect. On the latter topic, for example, it is unclear whether under Mr. Lewis's approach a *Gant* evidence search would be lawful if the police plan to transport the suspect to the station to then be released on citation. *See generally* D.C. Code § 23-584 (b) (2016 Cum. Supp.) (authorizing certain officials to grant citation release to arrestees after appearance at law-enforcement agency). To take another example relating to a separate topic, it is unclear how Mr. Lewis's approach would be applied if different officers on the scene had different intents. In light of these and other similar questions, we conclude that Mr. Lewis's approach would not provide a significantly clearer framework for police than the objective approach that we adopt.

## III.

## A.

A central theme of the dissent is that permitting a search incident to arrest to precede formal arrest would contradict "the traditional requirement of a completed formal arrest to justify a search." *Post* at 72. The Supreme Court, however, has held that the search-incident-to-arrest exception contains no such requirement. *Rawlings*, 448 U.S. at 111 ("Where the formal arrest follow[s] quickly on the heels of the challenged search of [a suspect's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). Notwithstanding the dissent's reservations about *Rawlings*, we are bound by *Rawlings*'s holding. *See generally, e.g.*, *Mercer v. United States*, 864 A.2d 110, 114 n.4 (D.C. 2004).

As part of its implicit critique of *Rawlings*, the dissent states that the "search-incident-to-arrest exception that existed at common law" was limited to

instances in which formal arrest preceded the search. *Post* at 49. That does not appear to be the case. The dissent cites no common-law authority holding or explicitly stating that a lawful search incident to arrest cannot precede the formal arrest. *Id.* The Supreme Court has pointed out that the historical underpinnings of the search-incident-to-arrest doctrine are "sparse." *United States v. Robinson*, 414 U.S. 218, 230 (1973). But the Court in *Rawlings* relied on a number of decisions holding that a search incident to arrest can lawfully precede the arrest. *Rawlings*, 448 U.S. at 111 (citing, *e.g.*, *United States v. Brown*, 150 U.S. App. D.C. 113, 114-15, 463 F.2d 949, 950-51 (1972) (per curiam) (approving search incident to arrest where officer, who had probable cause to believe defendant was in possession of narcotics, introduced himself and then searched defendant; no indication officer had seized defendant before search or intended to arrest defendant before search; "Even though a suspect has not formally been placed under arrest, a search of his person can be justified as incident to an arrest if an arrest is made immediately after the search, and if, *at the time of the search*, there was probable cause to arrest.")). Although one can also find contrary decisions, the line of authority on which *Rawlings* relied reaches back nearly a hundred years. *See, e.g.*, *United States v. Gorman*, 355 F.2d 151, 160 (2d Cir. 1965) (Friendly, J.) (dicta) ("We do not understand just what values would be served by a rule that would force the police to impose a justifiable restraint on the person as a condition to making a

search which, if fruitless, might cause them to decide against it; on the other hand, if the search does lead them to make an arrest for which reasonable cause previously existed, the search would seem 'incident to arrest,' in any normal use of language, and the dilemma of seeking to justify the arrest by the search and at the same time to justify the search by the arrest is obviously not presented.") (citations and internal quotation marks omitted); *People v. Simon*, 290 P.2d 531, 533 (Cal. 1955) (Traynor, J.) (in case where officer stopped defendant, searched defendant, found marijuana, and arrested defendant, court concluded that "search [was] not unlawful merely because it precede[d] rather than follow[ed] the arrest"); *State v. McDaniel*, 237 P. 373, 376 (Or. 1925) ("It is urged that the arrest followed, and did not precede, the search. In our opinion it is immaterial whether the arrest preceded or followed the search, if such acts were practically simultaneous, and if, in fact, the defendant was guilty of committing a crime in the presence of the officers for which he might have been arrested. In many instances it is dangerous for an officer to go through the formality of stating that the accused is under arrest, and the law does not require him to do so. It is oftentimes safer to act first and talk afterward.").

The dissent also attempts to marginalize *Rawlings* by describing *Rawlings* as presenting "rare circumstances" or "unusual facts." *Post* at 54-55 & notes 5-6, 62.

To the contrary, the issue presented in *Rawlings* arises with great frequency. Many published appellate decisions apply *Rawlings* to uphold searches conducted incident to, but before, arrest. See *supra* at 9-10. Although the dissent could be read to suggest that *Gant* indicated that lawful searches incident to arrest that precede formal arrest will be "rare," *post* at 55 note 6, in fact, *Gant* used the word "rare" to describe one particular type of search incident to arrest: a justifiable search of a vehicle, to protect officer safety, occurring before an officer can adequately secure the suspect. 556 U.S. at 343 n.4. Nothing in *Gant* suggests that it would be unusual for lawful searches incident to arrest generally, or *Gant* evidence searches specifically, to precede formal arrest.

**B.**

Although the dissent somewhat tentatively suggests that *Rawlings* is inapplicable to *Gant* evidence searches, *post* at 59-60, the dissent ultimately concludes more narrowly that, at a minimum, an arrest must be under way for a *Gant* evidence search to be lawful. *Post* at 56-59. We disagree.

The dissent correctly notes that Justice Scalia's concurrence in *Thornton v. United States*, 541 U.S. 615 (2004), spoke in terms of searches incident to arrests that had already occurred. *Post* at 48-53. According to the dissent, this language reflects a considered judgment that evidentiary searches incident to arrest should be limited in conformity with the common-law rule that formal arrest must precede a search incident to arrest. *Id.* Moreover, the dissent reasons, the Supreme Court in *Gant* adopted the reasoning of Justice Scalia's concurrence in *Thornton*. *Id.* Therefore, the dissent suggests, *Gant* should be understood as implicitly precluding *Gant* evidence searches that precede formal arrest. *Id.* Our analysis differs from that of the dissent in a number of respects.

First, as we have already noted, *supra* at 24-26, there does not appear to have been a settled common-law rule that the formal arrest must precede a search incident to arrest. Second, the defendant in *Thornton* had been placed under formal arrest before the search at issue. 541 U.S. at 618. Justice Scalia thus had no occasion to address whether evidence searches incident to arrest may, in conformity with *Rawlings*, precede the formal arrest. Although Justice Scalia expressed his conclusion in terms reflecting the circumstances of *Thornton*, that cannot reasonably be understood to reflect a considered intent to implicitly carve out an exception to *Rawlings*. The dissent itself recognizes the applicable general

principle. *Post* at 57-58 (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33 (1944) ("It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading.")). Third, *Gant* does not itself impose a requirement that *Gant* evidence searches must follow the formal arrest. In *Gant* too the defendant had been formally arrested before the search at issue, 556 U.S. at 336, so the Court had no occasion to consider the applicability of *Rawlings*. But the Supreme Court's language in *Gant* suggests that the Court in *Gant* understood and intended that *Rawlings* would continue to permit searches incident to arrest to be conducted before the formal arrest. For example, in explaining the basis for *Gant* evidence searches, the Court states that in some cases "the offense of arrest" -- not, as the dissent would have it, the fact of arrest -- "will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 556 U.S. at 344; *see also id.* at 335 ("[C]ircumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle."); *id.* at 343 & n.4 (indicating that searches incident to arrest for safety purposes may be conducted before officers "fully effectuate an

arrest"). Fourth, we are doubtful that as a lower court we could appropriately infer that *Gant* implicitly intended to carve out an exception to the holding of *Rawlings* that searches incident to arrest may precede the formal arrest. *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (rejecting proposition "that other courts should ever conclude that [the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent"). Fifth, as we have already noted, *supra* at 6, every court of which we are aware to have decided the issue has held that *Rawlings* applies to *Gant* evidence searches.

In light of the foregoing considerations, it is not surprising that the dissent itself does not appear to rest on the idea that *Gant* implicitly carved out an exception to *Rawlings*. Rather, the dissent primarily takes the view that at a minimum an arrest must be under way before a *Gant* evidence search may lawfully be conducted. *Post* at 56-59. That view does not withstand analysis.

First, the Supreme Court in *Rawlings* suggested no such limitation. To the contrary, the Court stated its holding more broadly: it suffices if "formal arrest follow[s] quickly on the heels of the challenged search." 448 U.S. at 111. Second, the overwhelming weight of authority interprets *Rawlings* to permit searches

incident to arrest to precede the formal arrest, without any indication that arrest must in some sense be under way at the time of search. *Supra* at 6-7, 9-11, 13; *see also, e.g.*, *Brown*, 150 U.S. App. D.C. at 114-15, 463 F.2d at 950-51 (approving search incident to arrest where officer, who had probable cause to believe defendant was in possession of narcotics, introduced himself and then searched defendant; no indication officer had seized defendant before search or intended to arrest defendant before search). In contrast, there is virtually no support in the case law for the dissent's novel limitation on *Rawlings*. Third, the concept of an arrest being "under way" is remarkably opaque. As previously noted, *supra* at 15, counsel for Mr. Lewis indicated at oral argument that an arrest is under way as long as the officers subjectively intend to make an arrest. On that view, the term "under way" is simply another way of requiring a subjective intent to arrest. The dissent does not explain whether it agrees with Mr. Lewis that subjective intent to arrest suffices, or whether instead the dissent believes that officers must take some unspecified action objectively manifesting their intent to arrest before an arrest will be deemed under way. *Post* at 55-57. Given these fundamental uncertainties, we are not persuaded by the dissent's vague assurance that the term "under way" is not ambiguous. *Id.* at 58. Relatedly, it is difficult to understand the dissent's assertion that Ms. Gibbs's arrest in this case was "not under way—under any definition of the term—when the police searched Mr. Lewis's car." *Id.* at 59. To the contrary,

at the time of the search, Ms. Gibbs had been seized, the police had probable cause to arrest her, and she was arrested promptly after the search. Her arrest thus can be understood to have been "under way" in an ordinary sense of the term. *Merriam-Webster's Collegiate Dictionary* 1364 (11th ed. 2012) (defining "under way," inter alia, as "in progress" or "afoot"). Finally, the dissent's conclusion that an arrest was not under way in this case necessarily rests on the view that a *Gant* evidence search is unlawful unless the police subjectively intend to arrest the defendant at the time of the search. As we have already explained, *supra* at 16-21, controlling Supreme Court authority forecloses such an approach. The search of the car in this case was based on particularized suspicion that the car contained evidence of a crime. The Supreme Court has repeatedly and unequivocally held that such searches may not be invalidated on the basis of officers' subjective intent. *Id.* at 16-17 (citing cases). The dissent's response to this controlling authority is to suggest that there may be an exception permitting consideration of subjective intent where "the government wishes to deviate from objective, existing warrant exceptions." *Post* at 72. For the reasons already stated, this case does not involve a "deviat[ion] from objective, existing warrant exceptions." In any event, the Supreme Court could not have been clearer: searches based on particularized suspicion may not be invalidated based on the officer's subjective intent. Given

our obligation to follow the holdings of the Supreme Court, we see no room for the dissent's approach.

## C.

According to the dissent, upholding the legality of the search in this case will "eviscerate[] the limits" imposed in *Gant* on searches incident to arrest, will permit "rummaging at will" during searches "untethered in every respect from an actual arrest," "asks almost nothing of police officers before they conduct a search of a car incident to arrest," and "invites" discriminatory law enforcement. *Post* at 47, 41 (brackets omitted), 65, 69. These would be very serious objections if they were well founded, but they are not well founded.

The Supreme Court in *Gant* precluded a particular type of search incident to arrest: searches justified neither by a need to protect officer safety nor by a particularized reason to believe that there would be evidence of crime in the area searched. *E.g.*, 556 U.S. at 344 ("Neither the possibility of access [to a weapon] nor the likelihood of discovering offense-related evidence authorized the search in

this case."). The search in the present case differs critically from the type of search precluded in *Gant*, because the search of the car in the present case rested on particularized reason to believe that the car contained evidence of the POCA offense. Upholding the legality of the search in the present case in no way undermines *Gant*'s rejection of suspicionless searches. For the same reason, upholding the search in this case will not permit officers to "rummag[e] at will." *Post* at 41. The Supreme Court used the term "rummage" in *Gant* to refer to searches not based on particularized suspicion. *Id.* at 345 (permitting search "when there is no basis for believing evidence of the offense might be found in the vehicle" "implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects"); *see also, e.g.*, *Merriam-Webster's Collegiate Dictionary* 1089 (11th ed. 2012) (defining "rummage," inter alia, as "to engage in an undirected or haphazard search"). Because it was based on reason to believe that the car contained evidence of POCA, the search in this case cannot reasonably be described as involving "rummaging at will." *Post* at 41 (brackets omitted).

The search in this case occurred after Ms. Gibbs had been seized and at a time when the police had probable cause to arrest Ms. Gibbs for POCA. The search rested on particularized reason to believe that the car would contain

evidence of POCA. After the search, Ms. Gibbs was promptly arrested for POCA. Far from being "untethered in every respect from an actual arrest," *post* at 41, the search was very closely tethered to Ms. Gibbs's arrest. And far from "ask[ing] almost nothing of police officers before they conduct a search of a car incident to arrest," *post* at 65, *Gant* evidence searches, as we understand them, require both probable cause to arrest for an offense and particularized reason to believe that the vehicle that is searched will contain evidence of that offense.

We turn finally to the dissent's view that upholding the legality of the search in this case will invite discriminatory law enforcement. *Post* at 68-69. As previously noted, many courts have upheld searches incident to arrest where the search preceded the formal arrest and where officers were not shown to have intended to arrest at the time of the search. *Supra* at 6-7. Nevertheless, the dissent has pointed to no evidence that such rulings have contributed to abusive or discriminatory law enforcement. Although the dissent cites materials describing discriminatory law-enforcement tactics, including the use of racial profiling and "baseless[]" stops, *post* at 68 note 14, the dissent does not identify any material linking those problems to the particular issue in this case.

We share the dissent's more general concerns about discriminatory law enforcement. *Post* at 68-69. But the dissent fails to explain how the approach it favors would materially reduce the incentive to conduct searches of suspects whom officers would otherwise not be inclined to arrest. It is true, as the dissent states, that "arrests consume law enforcement resources." *Post* at 64. Because it is unclear what steps the dissent would require officers to take before searches would be permitted, *supra* at 35, it is unclear what practical consequences the dissent's approach would have. In any event, officers who wanted to conduct searches might well decide to devote the necessary additional resources. As we and other courts have noted, *supra* at 8-9, 29, the approach advocated by the dissent might well be worse for suspects in some circumstances than an approach that permits searches that precede formal arrest. In any event, whatever the possible policy implications of the various approaches, we conclude that binding Supreme Court doctrine precludes the approach advocated by the dissent.

In sum, the dissent in our view rests on a novel and vague limitation of the Supreme Court's holdings in *Rawlings* and *Gant*. Moreover, the dissent's approach is incompatible with the Supreme Court's repeated holdings that searches based on particularized suspicion may not be invalidated based on officers'

subjective motivation or intent. We therefore respectfully disagree with the dissent.

## IV.

To reiterate, we hold that, under the applicable Supreme Court decisions, a *Gant* evidence search is lawful if (a) the police have probable cause to arrest the suspect for an offense, *Maryland v. King*, 133 S. Ct. 1958, 1970 (2013) ("[P]robable cause provides legal justification for arresting [a suspect], and for a brief period of detention to take the administrative steps incident to arrest. . . . The validity of the search of a person incident to a lawful arrest [is settled].") (internal quotation marks omitted); (b) the suspect recently occupied a vehicle, *Gant*, 556 U.S. at 343; (c) the police have reasonable, articulable suspicion to believe that the vehicle contains evidence of the offense, *id.*; (d) at the time of the search, the police have not released the suspect or issued the suspect a citation for the offense, *Knowles*, 525 U.S. at 118-19; and (e) the suspect's formal arrest for the offense follows quickly on the heels of the search, *Rawlings*, 448 U.S. at 111.

In this case, Mr. Lewis does not dispute that the police had probable cause to arrest Ms. Gibbs for POCA. Ms. Gibbs was a recent occupant of the car. The

division has already ruled that the police had reasonable, articulable suspicion to believe that the car contained evidence of POCA, and the en banc court left that ruling undisturbed. *Nash*, 100 A.3d at 164-65; *Lewis*, 107 A.3d at 603. Ms. Gibbs had not been released or issued a citation at the time of the search. Finally, Mr. Lewis does not dispute that officers made a prompt formal arrest of Ms. Gibbs for POCA. We therefore reverse the trial court's order of suppression and remand for further proceedings.

*So ordered.*

BECKWITH, *Associate Judge*, with whom WASHINGTON, *Chief Judge*, and EASTERLY, *Associate Judge*, join, dissenting: By the time Officer Brown arrived at the scene on Ingraham Street, Officer Alto had already detained appellant David Lewis for driving with a suspended license, and Brittney Gibbs, Mr. Lewis's passenger, had already handed over and claimed ownership of the half-full bottle of tequila Officer Alto spotted in the car's center console. Though the officers had probable cause to arrest Ms. Gibbs for possession of an open container, they did not arrest her. They searched the car instead. Officer Alto was considering letting Ms. Gibbs drive the car away, so he wanted Officer Brown "to check the vehicle

for other open containers of alcohol" and to "make sure there's no other contraband in the vehicle."

While Ms. Gibbs sat unrestrained on the police cruiser's bumper, Officer Brown opened the front passenger door and began her search. After she smelled marijuana, saw a plastic cup with alcohol in it on the floor, and found a marijuana cigarette in the passenger door handle, she kept searching. It was not until Officer Brown unzipped a Nike bag in the back seat and discovered a handgun that she decided to arrest Ms. Gibbs, who was still unrestrained and "standing outside the car." Officer Brown then conducted a true search incident to Ms. Gibbs's actual arrest, recovering "a bag of marijuana that she had stuffed in her bra."

The search of Mr. Lewis's car was not a search incident to arrest as this court or the Supreme Court has ever conceived of that exception to the warrant requirement.

The search was not incident to Mr. Lewis's arrest: he was handcuffed at the time of the search and the police had no reason to think they would find evidence

of the offense of driving with a suspended license in the car.  *See Chimel v. California*, 395 U.S. 752, 763 (1969) (identifying the rationales justifying the search-incident-to-arrest exception—disarming the suspect and securing evidence related to the offense of arrest that the suspect might destroy); *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (holding that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'") (citation omitted).

Nor was the search somehow incident to Ms. Gibbs's eventual arrest.  If anything, it was the officers' decision *not* to arrest Ms. Gibbs that gave rise to their need to search Mr. Lewis's car, because, as Officer Brown testified, Ms. Gibbs "wasn't under arrest and the car wasn't impounded," so "she could have driven away" with contraband in the car.  The search had nothing to do with disarming an arrestee or preventing her from destroying evidence related to an offense of arrest, *see Chimel*, 395 U.S. at 763, and it was only after the search turned up a gun that Officer Brown decided to arrest Ms. Gibbs after all.

Such an investigative search, untethered in every respect from an actual arrest, runs contrary to the basic Fourth Amendment principle that "conducting a *Chimel* search is not the Government's right; it is an exception—justified by necessity—to a rule that would otherwise render the search unlawful." *Thornton v. United States*, 541 U.S. 615, 627 (2004) (Scalia, J., concurring). Officer Brown's wait-and-see approach to Ms. Gibbs's arrest involved the type of "rummag[ing] at will" that the Supreme Court has sought to protect against, *see Chimel*, 395 U.S. at 767, and this search of Mr. Lewis's car, "conducted outside the judicial process, without prior approval by judge or magistrate," was not reasonable under the Fourth Amendment, *Katz v. United States*, 389 U.S. 347, 357 (1967).

And yet the majority opinion upholds Officer Brown's investigative pre-arrest search because, in its view, it is a "*Gant* evidence search" that satisfies the majority's new five-part test governing the constitutionality of vehicle searches incident to arrest. *Ante* at 7-8. Under this test, a *Gant* evidence search is "incident to arrest" and thus constitutionally permissible even where the search precedes the arrest for the offense at issue and even where it is clear the officers did not intend to arrest the suspect. *Ante* at 7-8. Because Ms. Gibbs was ultimately arrested, the majority concludes, Officer Brown's search of the car was a permissible search

incident to arrest, even though it was doubtful Officer Brown intended to arrest Ms. Gibbs before she found the gun.

The majority justifies this reading of *Gant*—which neither party fairly anticipated would be the basis for resolving this case and which neither party meaningfully briefed[1]—largely on the ground that it has not found a case holding to the contrary. *Ante* at 6. That no court has held to the contrary, however, cannot justify crafting a new *Gant* rule that flouts the very premise of *Gant* and that transforms the search-incident-to-arrest exception into a search-incident-to-probable-cause-to-arrest exception to the warrant requirement. Such an exception, neither specifically established nor well delineated, cannot be squared with Supreme Court precedent or the Fourth Amendment.

## I.

---

[1] In their briefs as in their respective statements of the issue presented for review, the parties focus on whether a Fourth Amendment search incident to arrest requires the government to prove more than just probable cause to arrest at the time of the search.

*Arizona v. Gant* is the beginning and end of the majority's analysis—specifically, the exception to the warrant requirement *Gant* recognizes in circumstances where officers stop a vehicle, arrest its occupant, and search the car for evidence of the offense of arrest. Given its reliance on *Gant*, then, the majority opinion is striking in two ways: (1) in the extent to which the opinion, by upholding what amounts to an investigatory search that cannot be justified by the rationales underlying the exception to the warrant requirement it is invoking, repeats the same kind of mistake the Supreme Court in *Gant* sought to stop lower courts from making, and (2) in the extent to which the majority must stray from the very precepts of *Gant*'s vehicle exception to apply it to the facts of this case.

In *Arizona v. Gant*, 556 U.S. 332 (2009), the Supreme Court set out to address a problem in Fourth Amendment doctrine that stemmed from its decision in *New York v. Belton*, 453 U.S. 454 (1981). In *Belton*, the Court applied *Chimel* to the automobile context and held that when the police have lawfully arrested a recent occupant of a car they may search the passenger compartment "as a contemporaneous incident of that arrest." *Id.* at 460. Applying the principles of *Chimel*, the Court predicated its decision on the "generalization" that articles in the passenger compartment "are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary

items.'" *Id.* (quoting *Chimel*, 395 U.S. at 763). Although the Court in *Belton* cautioned that its holding "in no way alter[ed] the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests," *id.* at n.3, the Court in *Gant* acknowledged that in practice *Belton* searches had come to exceed their permissible scope under *Chimel* and were being conducted solely for investigative purposes, *Gant*, 556 U.S. at 341–43. On this expansive reading of *Belton*, vehicle searches would be authorized incident to every recent occupant's arrest even if the passenger compartment were not in the arrestee's reach at the time of the search.[2] *Id.* at 343. The lower courts, in construing *Belton* so broadly, were "treat[ing] the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel*." *Id.* at 342 (quoting *Thornton*, 541 U.S. at 624 (O'Connor, J., concurring in part)).

In seeking to curtail these investigative searches under *Belton*, the Supreme Court in *Gant* began by reaffirming the axiom that a warrantless search is "*per se* unreasonable" absent justification under one of the "few specifically established

---

[2] As Justice Scalia observed in his *Thornton* concurrence, in some cases lower courts had upheld searches under *Belton* "even when . . . the handcuffed arrestee has already left the scene." *Thornton*, 541 U.S. at 628.

and well-delineated exceptions" to the warrant requirement. *Id.* at 338 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception, established by *Chimel*, is for searches of a suspect that are incident to the suspect's arrest and that are intended to ensure that the suspect does not have the ability to access weapons or destroy evidence. *Id.* (citing *Chimel*, 395 U.S. at 763). The *Gant* Court held that this *Chimel* exception, which had been impermissibly broadened for vehicle searches under *Belton*, authorized the search of a car incident to a recent occupant's arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343. With this holding, the Court made clear that *Chimel* cannot be construed to authorize the investigative vehicle searches then being conducted under *Belton*. *Id.* at 347 ("Construing *Belton* broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis."). The Court also held that separate and apart from *Chimel*'s two traditional justifications for the warrant exception, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343 (quoting *Thornton*, 541 U.S. at 632 (Scalia, J., concurring)).

The *Gant* Court then applied *Chimel* and the new vehicle exception to the facts of the case, in which Mr. Gant, after getting out of a parked car, was arrested for driving with a suspended license, handcuffed, and placed in the back seat of a police cruiser before officers searched his car and found a gun and cocaine. *Id.* at 336. In the Court's view, the officers' search was unreasonable. *Id.* at 344. The two *Chimel* rationales for a search incident to arrest did not apply because Mr. Gant was handcuffed and secured in the back of a police car. *Id.* The rationale underlying the vehicle exception also did not apply, as there was no chance of finding evidence of the "crime of arrest"—driving without a license—in Mr. Gant's car. *Id.*

No one here disputes that the police had probable cause to make an arrest for possession of an open container of alcohol (POCA). It is also undisputed that at the time of the search the police had not arrested Ms. Gibbs for POCA or for any other crime. Yet unlike in *Gant* itself, which explicitly allows only a search of a car for evidence "incident to a lawful *arrest*" for a "crime of *arrest*," 556 U.S. at 343 (emphasis added), the majority concludes that a *Gant* car search has a broader investigatory rationale that is implicated simply by probable cause to believe the suspect has committed an arrestable offense, not by the fact of arrest itself.

At the outset, the argument for expanding the *Gant* vehicle exception to searches incident to probable cause to arrest forgets the fundamental context in which *Gant* arose.  The Supreme Court in *Gant* was intent on reining in the purely investigative searches that had been occurring under *Belton*, and to that end the Court expressly rejected the notion of a "police entitlement" to search a car whenever a recent occupant has been arrested.  *Gant*, 556 U.S. at 342 (citation omitted).  By permitting a search of the vehicle incident to probable cause to arrest as part of a *Gant* vehicle search, the majority interprets *Gant* as authorizing law enforcement to conduct a broad investigatory search of the vehicle before making a decision about whether to arrest.  This reading of *Gant* eviscerates the limits the Court sought to impose on *Belton* car searches, and in fact would give the police more latitude to search than they had under lower courts' pre-*Gant* reading of *Belton*, which authorized a search incident to arrest only if there had been "a lawful custodial arrest" and the search was "a contemporaneous incident of that arrest." *Belton*, 453 U.S. at 460.  We cannot fairly read *Gant* as professing to scale back *Belton*'s investigatory searches while at the same time authorizing a search-incident-to-probable-cause-to-arrest  exception  that  by  definition  invites  such investigatory searches.

The majority's reading of *Gant* also ignores the principles underlying the vehicle exception, including, in particular, the exception's textual origins in Justice Scalia's concurrence in *Thornton*. Although this exception "d[id] not follow from *Chimel*," *Gant*, 556 U.S. at 343, the Court made clear that it was still a category of search incident to arrest, one whose rationale—securing offense-related evidence that might be found in the vehicle—is informed by the same concerns as those that inform the evidence-preservation rationale underlying *Chimel*. Like the traditional *Chimel* exception, then, this *Gant* vehicle search was in no way intended to authorize the type of open-ended investigative searches of which the *Gant* Court expressly disapproved in curbing *Belton*'s excesses. Rather, the *Gant* search was conceived as a narrow exception that would allow the police to search a car for additional evidence of the crime for which the arrestee will be charged. This search was designed only to address "circumstances unique to the vehicle context"—a car that could be driven away from the scene with relevant evidence still inside. *See id.*; *Wyoming v. Houghton*, 526 U.S. 295, 304 (1999) (noting that "in all car-search cases, the 'ready mobility' of an automobile creates a risk that the evidence or contraband will be permanently lost while a warrant is obtained").

The language in *Gant* adopting this vehicle exception was taken from Justice Scalia's concurrence in *Thornton*, 541 U.S. at 632. In Justice Scalia's view, even

in the absence of *Chimel*-like concerns, officers should be able to search a vehicle for evidence of a crime of arrest. On the facts of *Thornton*, where the police arrested Mr. Thornton on narcotics charges after finding marijuana and cocaine on his body in a lawful patdown, officers should also have been able to search his car for drugs, even though he was handcuffed and seated in a patrol car, with no access to weapons and no way of destroying any evidence.

The reasons Justice Scalia gave for this position had everything to do with the fact of arrest. He made clear that the position was not novel or radical, but merely a reflection of the search-incident-to-arrest exception that existed at common law. *Thornton*, 541 U.S. at 629. He cited pre-*Chimel* cases from 1914 through 1950 in which the Court had approved of searches for evidence "relevant to the crime for which the suspect had been arrested." *Id.* In every one of these cases, a suspect had been formally arrested.[3] Justice Scalia then quoted at length an 1872 common law treatise discussing the reasons for allowing such searches, calling such reasoning "typical":

---

[3] These cases include *United States v. Rabinowitz*, 339 U.S. 56, 58, 60–64 (1950); *Harris v. United States*, 331 U.S. 145, 148, 151–52 (1947); *Marron v. United States*, 275 U.S. 192, 198–99 (1927); *Agnello v. United States*, 269 U.S. 20, 30–31 (1925); *Weeks v. United States*, 232 U.S. 383, 392 (1914).

> The officer who arrests a man on a criminal charge should consider the nature of the charge; and, if he finds about the prisoner's person, or otherwise in his possession, either goods or moneys which there is reason to believe are connected with the supposed crime as its fruits, or as the instruments with which it was committed, or as directly furnishing evidence relating to the transaction, he may take the same, and hold them to be disposed of as the court may direct.

*Id.* at 630 (citing 1 J. Bishop, *Criminal Procedure* § 211, p. 127 (2d ed. 1872)). "There is nothing irrational," Justice Scalia added, "about broader police authority to search for evidence when and where the perpetrator of the crime is lawfully arrested," and it is this "fact of prior lawful arrest" that "distinguishes the arrestee from society at large, and distinguishes a search for evidence of *his* crime from general rummaging." *Id.* He even appeared to suggest that the police might in some sense be obligated to search for such evidence relevant to a charge of arrest. *See id.* at 632 (quoting *Smith v. Jerome*, 93 N.Y.S. 202, 203 (Sup. Ct. 1905) ("This right *and duty* of search and seizure extend, however, only to articles which furnish evidence against the accused." (emphasis added))).

Even as he endorsed these searches, Justice Scalia acknowledged that an evidence-gathering justification for a search is "far less compelling" than a *Chimel* rationale, where "officer safety or imminent evidence concealment or destruction is

at issue" and where "officers should not have to make fine judgments in the heat of the moment." *Id.* at 632. Justice Scalia therefore indicated that the exception should be carefully circumscribed to apply only to "relevant" evidence against the accused, and that the search of Mr. Thornton's car was legal because Mr. Thornton "was lawfully arrested for a drug offense" and the police had reason "to believe that further contraband or similar evidence *relevant to the crime for which he had been arrested* might be found in the vehicle from which he had just alighted and which was still within his vicinity *at the time of arrest*." *Id.* (emphasis added).

The reasoning of Justice Scalia's concurrence, upon which *Gant* exclusively relied in adopting an evidence-gathering search-incident-to-arrest exception, for the most part does not apply in the absence of a formal arrest. First, while a person who has been formally arrested undoubtedly has a lowered expectation of privacy in his body and effects, *see, e.g.*, *Maryland v. King*, 133 S. Ct. 1958, 1978 (2013), the government cites no case, and we are aware of none, suggesting that a person the police have probable cause to believe committed an offense, but who has not yet been subject to arrest for that offense, has a lowered expectation of privacy on

that basis alone.[4]   Second, Justice Scalia's concurrence—and the common law exception it resurrects—makes reference to the right and duty of officers to collect *relevant evidence against the accused*.   This right and duty arise presumably because formal arrest reflects an anticipation of formal charges and a formal criminal proceeding against the suspect.   The very concepts of "relevant evidence" and the "accused" presuppose a criminal proceeding of some kind.   *See, e.g.*, *Am. Tobacco Co. v. United States*, 328 U.S. 781, 787 (1946) ("The verdict in a criminal case is sustained only when there is 'relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt,' that the accused is guilty." (quoting *Mortensen v. United States*, 322 U.S. 369, 374 (1944))); *Wheeler v. United States*, 930 A.2d 232, 249 (D.C. 2007) (in cases "where the evidence requires careful weighing, the need for unfettered jury adjudication is at its zenith, and requires that each juror have considered all relevant evidence and be firmly

---

[4] In a footnote, the majority asserts that unlike Justice Scalia's statement in *Thornton* that the "fact of prior lawful arrest distinguishes the arrestee from society at large," *Gant* made reference only to searches as being incident to "lawful arrest," omitting the word "prior."  *Ante* at 12 note 3.  But *Gant* in no way purported to augment Justice Scalia's reasoning, much less to radically alter it by authorizing an evidence search incident to arrest that precedes the arrest.  *Gant*'s discussion of Justice Scalia's approach was brief and unequivocal; it adopted the approach and moved on.  Reading *Gant*'s omission of "prior" in this way also appears at odds with the *Gant* Court's purpose of narrowing the search-incident-to-arrest exception to address the problems *Belton* engendered.  If the Court had also intended to broaden the exception by authorizing a search without the predicate of an arrest, it would have said so.

convinced that there is no reasonable doubt as to the accused's guilt"). The duty to collect relevant evidence against a person who officers have reason to believe will be formally accused of a crime has no meaningful application in a scenario in which officers objectively have probable cause to arrest but have chosen not to do so. Any argument that the common law would accommodate the type of search conducted in Mr. Lewis's case is in no way suggested by *Gant*, by the concurrence in *Thornton*, or by the cases and treatises Justice Scalia relied upon. To the contrary, these authorities all suggest that so novel an argument is at odds with the rationales underlying the common law exception.

At bottom, the majority's argument under *Gant*—that a search of a car incident to probable cause to arrest is justified because the police might arrest the person—appears no stronger than the argument the Supreme Court rejected in *Gant*: that a search of a car incident to arrest under *Chimel* is justified even when the arrestee is already secured because the police might have conducted the search earlier. Both arguments assume that, "one way or another, the search must take place." *Thornton*, 541 U.S. at 627. Yet both arguments overlook the fact that searching without a warrant "is not the Government's right; it is an exception— justified by necessity—to a rule that would otherwise render the search unlawful." *Id.*

## II.

The majority justifies allowing pre-arrest *Gant* vehicle searches incident to arrest on two main grounds: (1) that no Supreme Court precedent explicitly states the opposite—that pre-arrest *Gant* searches are impermissible—and (2) that requiring a formal arrest to be either completed or under way would contradict the Supreme Court's opinion in *Rawlings v. Kentucky*, 448 U.S. 98 (1980). *Ante* at 9, 12–13. But these justifications in turn get the warrant requirement backwards and derive from a strained reading of *Rawlings* that disregards Supreme Court precedent predicating the search-incident-to-arrest exception—whether under *Chimel* or *Gant*—on a formal arrest or perhaps, in rare circumstances like in *Rawlings*, an imminent and inevitable arrest.[5]

---

[5] Contesting the notion that *Rawlings* presents "rare circumstances," the majority argues that "the issue presented in *Rawlings* arises with great frequency" and that "[m]any published appellate decisions apply *Rawlings* to uphold searches conducted incident to, but before, arrest." *Ante* at 27. But the fact that lower courts have cited *Rawlings* in trying to justify a search-incident-to-probable-cause-to-arrest rule does not mean that the facts of *Rawlings*—where officers were in the process of arresting the suspect but had not yet formally done so—arise with great frequency.

That no Supreme Court case explicitly holds that pre-arrest *Gant* searches are unconstitutional is true as far as it goes. But the Fourth Amendment does not give the police unfettered power to conduct searches and seizures unless judges tell them not to, and this court is not creating policing policy on a blank slate. Rather, we start from the premise that a warrantless search is per se unreasonable, subject only to exceptions that have been defined clearly by the Supreme Court. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (general warrant requirement is "subject only to a few specifically established and well delineated exceptions . . . [that] are jealously and carefully drawn" (internal quotation marks and citations omitted)). With the exception of *Rawlings,* the Supreme Court's cases on the search-incident-to-arrest exceptions of *Chimel* and *Gant* involve circumstances in which a formal arrest was completed and explicitly state the exception in terms of a search incident to a lawful arrest.[6] In the absence of

---

[6] The footnote from *Gant* that the majority cites in suggesting that the Court "understood and intended that *Rawlings* would continue to permit searches incident to arrest to be conducted before the formal arrest," *ante* at 29, makes clear, consistent with *Rawlings*, that certain pre-arrest searches would be permissible in the "rare case" where an officer has not "fully effectuate[d] an arrest." *Gant*, 556 U.S. at 343 n.4.

precedent establishing a broader exception, the warrantless search of Mr. Lewis's car is presumed unreasonable.[7]

With respect to the majority's second justification for allowing pre-arrest searches, requiring that a completed or underway arrest precede a *Chimel* search is entirely consistent with *Rawlings*. In *Rawlings*, six police officers entered a house with an arrest warrant for a suspect and, not finding the suspect but spotting marijuana seed, detained the house's occupants, including Mr. Rawlings, for forty-five minutes, while two of the officers left to get a search warrant for the house. 448 U.S. at 100. Later, the occupants were read their *Miranda* rights[8] and a woman was ordered to empty her purse. *Id.* at 100-01. When it became clear that the purse contained drugs, the woman turned to Mr. Rawlings and told him "to take what was his." *Id.* at 101. Mr. Rawlings confessed that the drugs belonged to him, and the officers searched his person, finding $4,500 in cash and a knife, and then immediately placed him under formal arrest. *Id.* In three sentences at the very end of its opinion, after addressing at length whether Mr. Rawlings had

---

[7] That *Gant* was decided so recently also blunts the force of the majority's argument that pre-arrest *Gant* vehicle searches are permissible because the Supreme Court has never held them unconstitutional.

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

standing to challenge the search of his companion's purse, the Court rejected Mr. Rawlings's contention that the search of his person was not incident to a valid arrest, stating that "[w]here the formal arrest follow[s] quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Id.* at 111.

This language in *Rawlings* reflects a commonsense acknowledgment that where a formal arrest is under way at the time a suspect's wingspan is searched, as it surely was on the facts of *Rawlings*, a hypertechnical insistence upon excluding evidence uncovered in such a search would unnecessarily constrain the discretion of law enforcement. The majority casts this reading of *Rawlings* as reflecting an "implicit critique" of the case, *ante* at 24, but the opposite is true. *Rawlings* reaches the right result. The objective circumstances there—Mr. Rawlings was detained by four police officers for forty-five minutes while two other officers went to get a warrant—were such that there was never any question that Mr. Rawlings was going to be arrested at the time he was searched, and given that fact, the Court sensibly did not believe it "particularly important" that the search preceded the "formal arrest," because such an arrest had already been set in motion. Read in light of these facts, *Rawlings* cannot be construed as endorsing pre-arrest *Chimel* searches where an arrest is not at least under way. *See Armour*

*& Co. v. Wantock*, 323 U.S. 126, 132–33 (1944) ("remind[ing] counsel that words of [the Court's] opinions are to be read in the light of the facts of the case under discussion" and that "[g]eneral expressions transposed to other facts are often misleading").[9] And while the majority suggests that it is unclear what such an "underway" arrest means, *ante* at 15, the meaning is not ambiguous. If the arrest has not begun, there is no reasonable dispute that it is about to begin. It is

---

[9] In suggesting otherwise, the majority observes that *Rawlings* "relied on a number of decisions holding that a search incident to arrest can lawfully precede the arrest." *Ante* at 25. But the cases cited in *Rawlings* do not endorse a search-incident-to-probable-cause-to-arrest exception to the warrant requirement, and they were wrongly decided if they do. The officers involved in those cases were conducting the searches with a conditional intent to arrest for the offense for which they had probable cause if the searches were fruitful. *See, e.g.*, *United States v. Brown*, 463 F.2d 949, 950 (D.C. Cir. 1972) (where the officer's search was clearly intended to confirm or dispel that the envelope "protruding from appellant's shirt pocket" contained narcotics—as the appellant's eyes were "glassy," he was behaving suspiciously in an area where the officer had "frequently observed" narcotics transactions, and the envelope was "of the type in which [the officer] had found narcotics on previous occasions"—the court upheld the search even though the suspect had "not formally been placed under arrest" at the time the officer seized the envelope); *Bailey v. United States*, 389 F.2d 305, 307–09 (D.C. Cir. 1967) (holding that where the government conceded that "in law the arrest of the car's [occupants] took place at the time [the officer] approached the car, perhaps with gun drawn, and told appellants to sit still and keep their hands in plain sight," that officer could, as a search incident to arrest, confiscate a wallet that he saw on the car floor, even though he had not yet conducted the formal arrest). For this reason, and because the circumstances of those cases triggered no concerns about pretextual searches, the cases also do not control this case. *See* Wayne R. LaFave, *Search and Seizure* § 5.4 (a) (5th ed. 2012) (noting that it is "particularly unsettling" to interpret *Rawlings* to permit pre-arrest searches where there is probable cause to arrest and "when the offense for which pre-search probable cause existed was so trivial that it otherwise would likely have been ignored").

imminent and inevitable. The concept of an "underway" arrest distills, in a word, the concern at the end of *Rawlings*.

In any event, Ms. Gibbs's arrest was not under way—under any definition of that term—when the police searched Mr. Lewis's car. Officer Alto decided *not* to arrest Ms. Gibbs after confiscating the open bottle of tequila, and so Ms. Gibbs remained sitting unrestrained on the bumper of the police cruiser while Officer Brown searched the vehicle to see what other contraband she might find. Unlike in *Rawlings*, the circumstances here showed that Ms. Gibbs was unlikely to be arrested before Officer Brown found the gun at the end of her search. Officer Brown's investigatory search of the vehicle, with no arrest of Ms. Gibbs imminent or inevitable, bears little resemblance to the search incident to an underway arrest in *Rawlings*.

Of course, this case involves a *Gant* vehicle search, and it is not clear that *Rawlings* applies at all in this context. For his part, Mr. Lewis argues that while concerns for officer safety may sometimes justify pre-arrest *Chimel* searches when the arrest is under way, those concerns are not present when the police conduct *Gant* vehicle searches. It may make sense not to stand on formalities when an

arrest is already under way and there is a real danger that the suspect might gain access to a weapon or destroy evidence, but the same beat-him-to-the-draw logic does not apply so clearly to searches of vehicles for evidence relevant to a crime of arrest. The majority's only direct response to this point—that other courts have applied *Rawlings* to *Gant* evidence searches, *ante* at 15-16—is less than compelling.

Even if the *Rawlings* logic does apply to pre-arrest *Gant* searches, the resulting rule should then be that *Gant* vehicle searches incident to arrest are lawful only where a formal arrest is completed or under way. But the majority rejects this modest approach and suggests instead that under *Rawlings*, *Gant* vehicle searches should be permissible whenever officers have probable cause to arrest for an offense and where the vehicle may contain evidence of that offense (along with the majority's other conditions).

Recognizing that the Supreme Court in *Rawlings* "did not explain [the] reasons" of its fleeting analysis, the majority looks to other state court decisions and gleans from them three policy rationales that it says underlie *Rawlings* and that support a search-incident-to-probable-cause-to-arrest approach to *Gant*. *Ante* at

10, 16. But imported policy rationales cannot create a well-delineated exception to the warrant requirement where none exists. And in any event, the majority's policy grounds for a pre-arrest *Gant* exception fall short on the merits.

As its first policy rationale, the majority asserts that a pre-arrest *Gant* search based on probable cause might benefit an innocent suspect if it negates such probable cause and leads to a decision not to arrest. Under a bright-line approach requiring a formal arrest to justify a search incident to arrest, the argument goes, the police will simply arrest more people, including some people they may not have arrested had they searched them first and found nothing incriminating.

But determining how a search-incident-to-probable-cause-to-arrest rule would affect innocent suspects involves a series of complex empirical questions. The precarious assumptions that emerge from such an inquiry are not persuasive grounds for engaging in an otherwise counterintuitive interpretation of Supreme Court precedent to allow a search incident to arrest in the absence of an arrest. Indeed, while the majority cites *State v. Overby*, 590 N.W.2d 703, 706 (N.D. 1999), for the proposition that "if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to

the advantage of the person searched not to be arrested," *ante* at 10, the *Overby* court was itself divided in that regard. Chief Justice VandeWalle, joined by another justice, wrote that "[t]he insult remains," adding, "[m]ore importantly," that

> the reality is that an officer who is suspicious may be subconsciously tempted to conduct a search before making the arrest with the expectation or hope that the search will produce such irrefutable evidence of the commission of a crime that a lack of probable cause to arrest prior to the search will be overlooked, or such suspicion as did exist will be viewed more favorably in light of the evidence discovered in the search if, in fact, there is evidence discovered.

*Id*. at 708 (VandeWalle, C.J., concurring specially).

The majority's second policy rationale, that a pre-arrest *Gant* search adds no further intrusion where an arrest is already "inevitable," *ante* at 10, 16, may well be true. The difficulty, however, is in determining when an arrest is truly inevitable. Sometimes a set of unusual facts, like those in *Rawlings*, will objectively indicate the inevitability of an arrest at the time of a pre-arrest search. An approach that attempts to extract from *Rawlings* and *Gant* an administrable rule—that a search incident to arrest is legal only in the face of a completed or "underway" arrest— provides a workable proxy for inevitability. The majority's proposed conditions to

the legality of a pre-arrest *Gant* search, in contrast, are not proxies for the inevitability of an arrest. The circumstances of the five-factor test—that officers have probable cause to arrest, that the suspect has just come from a car, that the police have reason to believe the car might contain evidence of the arrestable offense, that the police have not released the suspect or issued a citation, and that the suspect's arrest for the offense follows quickly on the heels of the search—in no way imply that the suspect inevitably would have been arrested for that offense. Indeed, there are strong indications that the officers had no intent to arrest Mr. Lewis or Ms. Gibbs for POCA, at least before their pre-arrest search uncovered evidence of more serious crimes.

As to the majority's final policy rationale for pre-arrest *Gant* searches, courts do appear "reluctant to micromanage the precise order in which officers who have probable cause to arrest conduct searches and arrests" in the context of a *Chimel* search where, as in *Rawlings*, the arrest is under way. *Ante* at 10. And the majority's citation on this point, *Anderson v. State*, 553 A.2d 1296 (Md. Ct. Spec. App. 1989), says nothing beyond that unremarkable truism. *See id.* (noting that it would be an "absurdity" to require officers in a "combat situation" right before arrest to "lose critical seconds," and lose the chance to "beat[] his opponent to the

draw," in order to "say the operative words, you are under arrest").[10] Requiring that an arrest be completed or under way is entirely consistent with judges' concerns about micromanaging police. This approach does not seek to micromanage the conduct of officers acting in what are often stressful situations, but rather to force these officers to verify at the front end that their searches are tethered to an actual arrest supported by probable cause, rather than mere general rummaging that may or may not lead to an arrest depending on what the officers find. And because arrests consume law enforcement resources, predicating a search incident to arrest upon an actual arrest has the added benefit of prompting police officers to think more critically about whether the offense for which probable cause exists—and which provides the basis for the search—is serious enough to justify the costs associated with an arrest. Such an approach could also foster trust and respect between police officers and community members.[11]

---

[10] The government argues in its brief that mere probable cause to arrest creates a combustible arrest situation because the suspect will know he is in trouble. In circumstances that are devoid of other objective indications of an intent to arrest, however, it is far from clear that a suspect would realize an officer has probable cause to arrest him. And that same logic could be used to justify a search incident to any traffic stop of a vehicle on the theory that reasonable suspicion to stop the vehicle creates a combustible stop situation.

[11] *Cf.* U.S. Dep't of Justice, Investigation of the Baltimore City Police Department 8 (2016), https://www.justice.gov/opa/file/883366/download (reporting that "[i]n some cases, [Baltimore City Police Department] supervisors

(continued…)

The majority's test, by contrast, asks almost nothing of police officers before they conduct a search of a car incident to arrest, and relies instead on a judicial officer's after-the-fact determination of probable cause to ensure the lawfulness of the search—a determination that will of course be made only if the suspect is arrested. Requiring an underway or completed arrest—and accordingly a probable-cause-to-arrest determination—before searching a car provides an additional safeguard against abuses in one of the few circumstances where we allow the police to search a vehicle "without prior approval by judge or magistrate" in the form of a search warrant. *See Coolidge*, 403 U.S. at 454; *see also Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (recognizing that "a warrant ensures that

---

(…continued)

have ordered officers to specifically target African Americans for stops and arrests," that "[t]hese failures [in policing] contribute to the large racial disparities in BPD's enforcement that undermine the community's trust in the fairness of the police," and that "BPD leadership has acknowledged that this lack of trust inhibits their ability to forge important community partnerships"); U.S. Dep't of Justice, Investigation of the Ferguson Police Department 5–6 (2015), https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/04/ferguson_police_department_report.pdf (highlighting "the lack of trust between the Ferguson Police Department and a significant portion of Ferguson's residents, especially African Americans," and concluding that this "distrust . . . is longstanding and largely attributable to Ferguson's approach to law enforcement," which "results in patterns of unnecessarily aggressive and at times unlawful policing; reinforces the harm of discriminatory stereotypes; discourages a culture of accountability; and neglects community engagement").

the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime'" (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948))).

It is true that the conditions the majority places on pre-arrest searches avert some of the possible abuses. An officer could not, for example, simply pull over a motorist for an extralegal reason (such as his race) on the basis of probable cause for an arrestable but pretextual traffic offense like reckless driving, search his car for evidence of some *other* crime, and expect to have the search upheld. But despite the majority's insistence that its test will not lead to abuses because *Gant* evidence searches must rest on "particularized suspicion," *ante* at 18, 20–22, 32–36, the majority's approach does nothing to stop officers from searching a car if the arrestable but pretextual offense is something like POCA, where evidence of the offense may well be in the car, but where officers have no intent to arrest for the minor offense if they fail to find evidence of other crimes. In such a case, the fact that there is particularized suspicion to believe the car contains evidence of that offense provides no comfort to a citizen whom the police want to stop and search

for evidence of other unrelated crimes, using POCA as a pretext.[12]  *See* Wayne R. LaFave, *Search and Seizure* § 5.4 (a) (5th ed. 2012).   Under the majority's approach, moreover, an officer who does not intend to arrest but conducts a search anyway will inevitably look for evidence that will firm up probable cause or justify an arrest on grounds other than those that formed the basis of the probable cause—a consequence that, besides defying the rationale of a *Gant* search, will effectively lower the bar to probable cause and make investigative searches more common.[13]

---

[12]  The government contends that such concerns are unfounded because there is no evidence of abuse in the more than 25 years since *Rawlings* was issued.  As an initial matter, not all courts have construed *Rawlings* to allow searches incident to probable cause to arrest.  *See, e.g.*, *People v. Reid*, 26 N.E.3d 237, 239 (N.Y. 2014) ("It is irrelevant that, because probable cause existed, there *could* have been an arrest without a search.  A search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not."); *State v. Funkhouser*, 782 A.2d 387, 406 (Md. Ct. Spec. App. 2001) ("It is axiomatic that a search incident to lawful arrest is absolutely dependent on the fact of an actual arrest.").  And even where courts have so construed *Rawlings*, we are aware of no data from 1980 to the present indicating the absence of such abuses.  Indeed, it is far from clear how such discriminatory pretextual searches would make their way into published judicial decisions in the first place.  These searches will receive judicial scrutiny where they fortuitously uncover evidence of a more serious crime and thus lead to an arrest, but will not in the many cases in which the police find nothing of interest.

[13]  *See supra* note 10.

These concerns are by no means hypothetical and carry with them serious implications for disparate enforcement in policing practices.[14] By allowing the police to conduct a search of a car in the absence of an underway or completed arrest based on probable cause to believe a specific offense has been committed,

_____

[14] *See generally, e.g.*, Complaint, *Wilkins v. Maryland State Police*, No. 93-468 (D. Md. Feb. 12, 1993), http://www.clearinghouse.net/chDocs/ public/PN-MD-0003-0007.pdf. In this class-action lawsuit, Robert Wilkins, an African-American attorney who now serves as a federal appellate judge, successfully challenged the racial profiling practices of the Maryland State Police after the police baselessly stopped and detained him and three relatives and searched their car on a highway in Maryland because the police believed they fit the state's drug courier profile. The litigation exposed the prevalence of pretextual stops and ultimately led to a consent decree in which the Maryland State Police agreed to revise and update its policies and procedures against racial profiling, retrain its troopers on proper traffic stops, develop a Police-Citizen Advisory Committee to address ongoing concerns about racial profiling, as well as take other measures to combat this problem. *See* Consent Decree, *Wilkins v. Maryland State Police*, No. 93-468 (D. Md. Apr. 22, 2003), http://www.clearinghouse.net/chDocs/public/ PN-MD-0003-0012.pdf; *see also* Baltimore Report, *supra* note 11, at 7 (noting that "BPD stopped African-American [pedestrians] three times as often as white residents after controlling for the population of the area in which the stops occurred," that "African Americans accounted for 82 percent of all BPD vehicle stops, compared to only 60 percent of the driving age population in the City," and that "BPD searched African Americans more frequently during pedestrian and vehicle stops, even though searches of African Americans were less likely to discover contraband"); Ferguson Report, *supra* note 11, at 4 ("Data collected by the Ferguson Police Department from 2012 to 2014 shows that African Americans account for 85% of vehicle stops, 90% of citations, and 93% of arrests made by FPD officers, despite comprising only 67% of Ferguson's population. African Americans are more than twice as likely as white drivers to be searched during vehicle stops even after controlling for non-race[-]based variables such as the reason the vehicle stop was initiated, but are found in possession of contraband 26% less often than white drivers, suggesting officers are impermissibly considering race as a factor when determining whether to search.").

the majority's rule dispenses with an important mechanism—an arrest—that makes it harder for officers to target individuals because of race or ethnicity and conduct wide-ranging investigatory searches of their vehicles even though the officers have no intent to arrest at the start of the search. An arrest requirement does just the opposite: it ties permissible police conduct to the fact of an arrest, authorizing a *Gant* search of the vehicle only if "evidence relevant to th[at] crime of arrest" might reasonably be found inside. *Gant*, 556 U.S. at 343. In light of the well-publicized concerns about racial profiling in some major cities, *see, e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), keeping the focus on the arrest properly mitigates a risk that the majority's approach actually invites—that officers will use an arrestable offense as a pretext to rummage through the cars of people from marginalized communities in order to look for evidence of other crimes.

**III.**

In its final argument in favor of broadly construing *Rawlings* to implicitly allow pre-arrest *Gant* searches, the majority contends that any alternative approach, such as a rule that *Gant* searches are permissible only if a formal arrest

is completed or under way, would inevitably require an inquiry into the subjective motivations of the arresting officers—an inquiry the Supreme Court has discouraged in cases like *Whren v. United States*, 517 U.S. 806 (1996). See *ante* at 16–18. This argument pervades the section of the majority's opinion defending its conclusion that a pre-arrest *Gant* vehicle search is permissible even where the officers had *no intention* of executing a formal arrest.

As a threshold matter, the approach most consistent with *Gant* and with Justice Scalia's *Thornton* concurrence—a bright-line rule that *Gant* vehicle searches are impermissible absent a completed formal arrest—would require no inquiry into the subjective intent of the officers. It is solely by virtue of the majority's insistence that the *Rawlings* logic apply to *Gant* searches that this question of subjective inquiry arises at all.

And in any event, the majority misapprehends Supreme Court precedent like *Whren* and *Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011), in insisting that the Court's "repeated[] reject[ion]" of "a subjective approach," *ante* at 16-17 (quoting *Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014)), bolsters the conclusion that pre-arrest searches are permissible where officers subjectively do not intend to

arrest. As the Supreme Court made clear in *Florida v. Jardines*, "those cases merely hold that a stop or search *that is objectively reasonable* is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reason." 133 S. Ct. 1409, 1416 (2013). Thus in *Whren*, the Court held that a traffic stop based upon probable cause for a traffic offense, even where the officer might have an invidious subjective motivation for the stop, is lawful under the Fourth Amendment. *Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *see also Jardines*, 133 S. Ct. at 1416 ("defendant will not be heard to complain that although he was speeding the officer's real reason for the stop was racial harassment"); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"); *Reid*, 26 N.E.3d at 240 ("[*Whren* and *Devenpeck*] hold that a stop or arrest is valid where it is supported by the necessary level of suspicion or probable cause, whatever the actual motive for the officer's action.").

But there is a difference between a defendant's delving into an officer's subjective intent to invalidate a search that is clearly otherwise legal under

objective, existing warrant exceptions[15] and a defendant's insisting that, if the government wishes to deviate from objective, existing warrant exceptions, it should do so only where that subjective intent aligns with the rationales underlying such existing exceptions. In a *Whren*-like situation, the government might reasonably be concerned that a valid traffic stop, objectively justified under well-established Supreme Court precedent, would be invalidated because of the vagaries of trial courts' credibility assessments about officers' subjective intentions in stopping a motorist. But here, the search of Mr. Lewis's vehicle was not objectively justified under existing and well-established exceptions to the warrant requirement, and thus the concerns expressed in *Whren* and its progeny do not apply with equal force. It is the government, not the defense, that hopes to persuade the court to deviate from the traditional requirement of a completed formal arrest to justify a search.[16] To do so, the government should have to show

---

[15] *See Brigham City v. Stuart*, 547 U.S. 398, 403–06 (2006) (officers' subjective motivations in entering a house were irrelevant where police were providing assistance under the emergency aid exception to the warrant requirement).

[16] Counsel for the government actually appeared to concede at oral argument that the subjective intent of the officer will sometimes be relevant to determining the legality of a search when he acknowledged that he would not want the judge to exclude an officer's testimony that he had made a definite decision to arrest.

that the arrest was under way, even if that requires a subjective inquiry into officer

intent.

Any subjective inquiry into an officer's intent to arrest, moreover, would

rarely require the type of extensive examination into an officer's state of mind that

the Supreme Court has generally guarded against in the Fourth Amendment

context.[17]   In the vast majority of cases involving searches incident to arrest, that

an officer subjectively intended to arrest a suspect will be readily discernible based

on the objective circumstances of the encounter.  *See, e.g.*, *Jardines*, 133 S. Ct. at

1416–17 (analyzing whether officers had "a purpose to conduct a search" based on

what "their behavior objectively reveals"); *Devenpeck*, 543 U.S. at 154 (arresting

officer's "subjective intent is *always* determined by objective means").  Before Mr.

Rawlings was "placed [] under formal arrest," for example, he was detained for

forty-five minutes, was administered *Miranda* warnings, and had confessed to

---

[17]   Even if it did, at least one case binding on this court examined an officer's subjective intent in the form of his trial testimony in concluding that a search was unreasonable under the Fourth Amendment.  *See White v. United States*, 271 F.2d 829, 831 (D.C. Cir. 1959) ("According to the officer's own testimony . . . the search did not turn upon an arrest for vagrancy, and to attribute it to such an arrest would be to take an unrealistic view of the evidence.  The arrest for vagrancy was incidental to the search, rather than the converse. . . .  We have more than once excluded evidence obtained by a search which in truth was not incidental to an arrest, but when in fact the arrest was incidental to a search.  This is such a case."  (citations omitted)).

possessing drugs found in a companion's purse—circumstances objectively indicating the officers' intent to arrest him. *See Rawlings*, 448 U.S. at 100–01. The officers' intent to arrest was similarly evident in *Millet v. United States*, 977 A.2d 932 (D.C. 2009), where, by the time the police searched Mr. Millet, officers had already lawfully recovered a bag of marijuana from his car, had arrested Mr. Fountain, the driver, for driving under the influence of marijuana, and had "told Millet and Fountain that they would both be charged in connection with the marijuana found in the bag." *Id.* at 934.[18]

---

[18] The majority relies heavily on broad statements from cases such as *Devenpeck* that subjective intent has no place in a Fourth Amendment setting. And yet the Supreme Court has expressly endorsed subjective inquiries into an officer's state of mind in certain Fourth Amendment contexts, including inquiries that seem very similar to the question of an officer's intent to arrest. In *Murray v. United States*, 487 U.S. 533 (1988), for example, the Court held that under the independent source doctrine, an unlawful warrantless entry into a warehouse would not require suppression of evidence obtained during a subsequent warrant-based search of the warehouse if the government could establish (1) that the warrant was based on information independent of what the officers saw during the warrantless entry and (2) that the officers *would have sought a warrant* even if they had not previously entered the warehouse. *Id.* at 541–43; *see also id.* at 547 (Marshall, J., dissenting) (stating that the majority opinion in *Murray* "makes the application of the independent source exception turn entirely on an evaluation of the officers' intent"); *United States v. Jadlowe*, 628 F.3d 1, 9–10 (1st Cir. 2010) (in independent-source case where officer testified that he "would have sought a warrant even had the officers not seen the bricks of cocaine in the garage," the court explained that the "police officers' subjective intent to seek a warrant is a factual determination subject to clear error review"); *United States v. Restrepo*, 966 F.2d 964, 972 (5th Cir. 1992) (explaining that "the core judicial inquiry before the

(continued…)

Of course, discerning an officer's subjective intent to arrest may in some cases prove less clear-cut, and officers may be understandably reluctant to subject themselves and the validity of their searches and seizures to the uncertainty of trial courts' credibility determinations. In such instances, officers have a straightforward and objectively verifiable alternative available to them: they can make the arrest.

## IV.

The rule the majority crafts for evaluating the constitutional validity of a pre-arrest *Gant* vehicle search is ostensibly narrow, but its five-part test cannot mask what is, at bottom, a profound departure from the essential moorings of the Supreme Court's well-established exceptions to the warrant requirement for both *Chimel*-style searches incident to arrest and *Gant* vehicle searches alike. The majority opinion is no mere application of *Gant* to a new set of facts. On the

---

(…continued)
district court on remand is a subjective one: whether information gained in the illegal search prompted the officers to seek a warrant to search [the residence]").

contrary, in upholding the pre-arrest search in this case under *Gant* even in the absence of any indication the police intended to arrest Ms. Gibbs before the search, the majority spurns Justice Scalia's unmistakable view that such an exception to the warrant requirement is justified by the "fact of prior lawful arrest." 541 U.S. at 630. The weakness of the majority's holding in this regard is underscored by its unsupportable and largely unexplained contention that the *Gant* Court, while expressly adopting the exception Justice Scalia proposed in *Thornton*, nevertheless rejected its analytic roots.

There are undeniable costs to expanding existing exceptions to the warrant requirement beyond their well-established bounds. Most notably, investigative searches will become more commonplace. Such searches, as the Supreme Court has repeatedly emphasized, "implicate[] the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Gant*, 556 U.S. at 345. With its new anomalous conception of the *Gant* vehicle search, the majority opinion downplays this central concern, discarding a key limiting principle in the foundation of *Gant* itself that is designed to address precisely this problem—"the fact of prior lawful arrest." *Thornton*, 541 U.S. at 630.

I respectfully dissent.